**Petition of PFC Michael P. WEBER, USMCR Serial Number 2182992**

v.

**The UNITED STATES of America: General Leonard J. Chapman, Jr., USMC, Commandant, United States Marine Corps: LCDR W. G. Murphy, USN, Commanding Officer, Navy Brig, Philadelphia Navy Yard, Pennsylvania.**

Misc. No. 3955.

United States District Court
E. D. Pennsylvania.

Aug. 19, 1968.

**492**

Moses M. Falk, New York City, for plaintiff.

U. S. Atty., Drew J. T. O'Keefe, Asst. U. S. Atty., Merna B. Marshall, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

WEINER, District Judge.

Relator, Michael P. Weber, seeks a writ of habeas corpus to discharge him from active duty with the United States Marine Corps and to restore him as a member of the United States Marine Corps Reserves, attached to the tenth motor transport battalion, USNCR, Philadelphia, Pennsylvania.

On May 4, 1966, Weber enlisted in the United States Marine Corps for a period of six (6) years of which six months was to be on active duty. The contract of enlistment, inter alia, provided that he could not be ordered to active duty without his consent except in time of war or when in the opinion of the President a national emergency exists or when otherwise prescribed by law, and that he may be required to perform active duty during such periods. He also signed a document titled, "Statement of Understanding upon enlistment". The relevant part thereof explained that as a reservist he would be deferred from induction through Selective Service System as long as his participation was satisfactory; that he would be required to attend at least 90% of scheduled drills and not more than seventeen (17) days active duty per year; that upon failure to perform duties as required, he could be ordered for forty-five (45) days of active duty or have his draft deferment cancelled and have a priority induction into service through Selective Service System; that he is liable to call for active service in time of national emergency or that he may be required to serve at such other times as the law may require.

On March 15, 1967, the Marine Corps changed its drill requirements to permit no absences unless excused. On March

9th and 10th, 1968, Weber failed to attend four drills. He was then given an opportunity to make them up which he refused. Concluding that absence from drills and refusal to make them up was tantamount to "unsatisfactory participation" he received orders to report for active duty for a period of seventeen months.[1] Ignoring said order, relator was placed under confinement and now seeks relief in the nature of a declaratory judgment, declaring the active duty orders to be void and unlawful. He argues that when he enlisted the legal contractual extent of his ready reserve requirement was to satisfactorily participate in at least 90% of scheduled drills during each year and serve on active duty not more than 17 days during each year. It is not disputed that relator had complied with the 90% requirement. He contends, therefore, that the government is bound by the enlistment contract and the statement of understanding.

The Government argues that no writ of habeas corpus should issue. Questioned is the jurisdiction of the court over the subject matter and if the change in drill requirements was a valid exercise of military authority.

The federal district courts have jurisdiction to grant a writ of habeas corpus to one who establishes that he is "in custody under or by color of the authority of the United States * * *." 28 U.S.C. § 2241(c) (1). More particularly, habeas corpus is available to determine whether the governmental agency under whose authority relator is being held as the requisite jurisdiction to do so, Eagles v. United States ex rel. Samuels, 329 U.S. 304, 311, 67 S.Ct. 313, 91 L.Ed. 308 (1946); accord, United States ex rel. Weidman v. Sweeney, 117 F. Supp. 739 (E.D.Pa.1953) (Clary, J.).

Defendant's argument that this court has no jurisdiction over this petition for habeas corpus relief until relator exhausts certain internal administrative remedies confuses the law in the post-induction area with that of several neighboring but distinct domains.

Habeas corpus is an extraordinary remedy, and is generally reserved for those situations where other relief is not practically available. Hence, this court would have no jurisdiction to entertain an application for a writ of habeas corpus prior to the relator's actual induction, e.g., Moskowitz v. Kindt, 273 F. Supp. 646, 648 (E.D.Pa.1967), and the cases there cited. Another situation which limits the availability of this type of relief is analogous to the law governing collateral attack in federal court of state convictions: where a relator has been convicted by a court-martial, he must first exhaust his remedies under the Uniform Code of Military Justice before applying to a federal district court for a habeas corpus writ, Gorko v. Commanding Officer, 314 F.2d 858, 860 (10th Cir.1963), Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950).

Luftig v. McNamara, 252 F.Supp. 819 (D.C.1966), cited by the government, is inapposite. Therein, the court had to consider a motion for a preliminary injunction instituted by a member of the United States Army. The underlying question in *Luftig* was whether the courts had any power to enjoin the Commander in Chief of the Army and Navy

---

1. On October 15, 1966, the Congress enacted Public Law 89–687 Section 101, 10 U.S.C. § 673a which empowered the President until June 30, 1968, to order to active duty any member of the Ready Reserve of an armed force, who, although a member of a reserve unit from a date before July 1, 1966, had not served on active duty or active duty for training for a period of 120 days or more and had not fulfilled his statutory reserve military obligation, and the Public Law also authorized the President to order to active duty any Ready Reservist who had not served on active duty for 24 months and had not fulfilled his statutory reserve obligation, and who, in the language of the statute, "Is not assigned to, or participating satisfactorily in, a unit of the Ready Reserve".

Relator was a member of a Selective Reserve within the meaning of the Public Law.

of the United States against carrying on a war or stationing a member of the Armed Forces in some particular area. Orloff v. Willoughby, 345 U.S. 83, 92, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953), is likewise inapposite, since the petitioner was not in custody and the issue therein was whether one lawfully inducted into the Army may, through habeas corpus proceedings, obtain a judicial review of his assignments to duty.

■ Relator herein seeks the classic determination for which the great writ of habeas corpus has always served as a vehicle: whether his detention is in accordance with, or contrary to, the law. For this purpose an inductee in the position of relator may apply to the federal district court for a hearing to determine whether or not the writ should issue, 50 U.S.C. App. § 460(b) (3), as amended, Pub.L. No. 90–40, § 1(8)–(10), 81 Stat. 104, 105 notwithstanding, see *Moskowitz*, supra 273 F.Supp. at 648; accord, Brown v. McNamara, 387 F.2d 150 (3d Cir., November 24, 1967)—(by implication).

Relator's contention that the increase in the requirement of attendance at scheduled drills from 90% to 100% constituted a violation of his enlistment contract and thereby violated the due process clause of the Fifth Amendment to the Constitution of the United States is without merit. His further argument that he may not be ordered into active service for more than forty-five (45) days is also without merit.

The increase in scheduled drills operated entirely within the limits of the enlistment contract. It contemplated the right to regulate the percentage of scheduled drills providing it did not violate minimum requirements fixed by Congress.

We concur with the opinion of Dooling, J. as set forth in Winters v. United States, 281 F.Supp. 289 (E.D.N.Y. 1968); aff'd 390 F.2d 879 (2d Cir. 1968); 281 F.Supp. at 296:

"The strenuous contention, therefore, that the Government was bound by the enlistment contract and the Statement of Understanding to continue as to the plaintiff the right to unexcused absence from ten percent of drills in each anniversary year must be rejected as wholly unsound".

When relator enlisted, two procedures were available to the Marine Corps. for dealing with delinquent reservists. He could be called to active duty for training for a period not to exceed forty-five (45) days, 10 U.S.C. § 270(b) (1964), or the Marine Corps could report him to the Selective Service System for priority induction, 50 U.S.C. App. § 456(c) (2), (d). A recently adopted measure, added a third procedure and provided that if a reservist did not participate satisfactorily he may be required to serve on active duty until his total service on active duty equals twenty-four (24) months. 10 U.S.C. § 673(a) (1966).

Relator's position is that the enlistment contract and Statement of Understanding constitute a binding contract with fixed obligations which the government may not alter by this retrospective legislation. That the enlistment contract and the Statement of Understanding constituted a valid contract between relator and the government seems to be readily accepted. In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890); Winters v. United States, 281 F.Supp. 289 (E.D.N.Y.) aff'd mem., 390 F.2d 879 (2d Cir.1968); Gion v. McNamara, Civil No. 67–1563–EC (C.D.Cal., filed Jan. 9, 1968); Baker v. State, 200 N.C. 232, 156 S.E. 917 (1931); State ex rel. Lanng v. Long, 136 La. 1, 66 So. 377 (1914). That the contract contemplated additional active duty in situations of national emergency or in time of war and at times otherwise prescribed by law is also readily accepted.

The crux of the contest in this case stems from the language, "or when otherwise prescribed by law". Relator contends that the language, "otherwise prescribed by law" indicates law at the time of his enlistment, or at least, an ambiguity which under contract law should be resolved against the party who prepared

the document; whereas the government argues that the language clearly intends future enactments. Two recent federal decisions involving the same Marine Corps contract have reached opposite results. In Gion v. McNamara, supra, the court held that the ordering of the petitioner to active duty because of unsatisfactory participation constituted a violation of petitioner's enlistment contract, and the application of 10 U.S.C. § 673(c) to petitioner constituted a violation of the due process clause of the Fifth Amendment. In Winters v. United States, supra, however, Judge Dooling held that the words "otherwise prescribed by law" did not expressly provide for future law, but that this conclusion was the evident and necessary meaning of any language so used in such instruments. (supra, 281 F.Supp. at 295, 296).

It appears to the court, that the view in the Winters case is the correct one. Cf. Pfile v. Corcoran, 287 F.Supp. 554 (D.Colo.1968). That the contract entered into by relator and the government was subject to the laws then in existence was sufficiently clear without any language necessary to explain this. All persons and all contracts are in this position. Head v. University of Missouri, 19 Wall 526, 86 U.S. 526, 22 L.Ed. 160 (1873). Language similar to that of the enlistment contract has been read to necessarily intend changes in the law. Head v. University of Missouri, supra; Munch v. Tusa, 140 Neb. 457, 300 N.W. 385 (1941).

█ The most recent case which subjected a delinquent reservist to active duty for twenty-four months even though his enlistment contract provided for active duty for delinquency not to exceed forty-five days is Pfile v. Corcoran, supra. The Pfile decision can be distinguished from Gion, Winters, and the instant case in that it involved an Army enlistment contract which did not include language which could have been interpreted to encompass future changes in the law. Notwithstanding the lack of language, the court held that an enlistment contract is not shielded by the contract clause of the Constitution when the Congress acts within its War Powers and in the National security. The court noted, "* * * we are constrained to hold that a contract such as the present one always stands in the shadow of the exercise by Congress of positive paramount sovereign powers". Supra, 287 F. Supp. at 561. The question whether congressional power and national policy supersede the ordinary obligations of the enlistment contract so as to include future enactments in the absence of language in the contract to that effect need not be answered in the instant case. We hold that the language in the enlistment contract and Statement of Understanding contemplate future changes in the law and 10 U.S.C. § 673(c) is applicable to relator.