John E. BATES, Petitioner,

v.

**COMMANDER, FIRST COAST GUARD DISTRICT and Commanding Officer, United States Coast Guard Base (T & A), Boston, Massachusetts, Respondents.**

**Misc. Civ. No. 68–64–F.**

United States District Court
D. Massachusetts.

March 7, 1969.

Daniel Klubock, Boston, Mass., for plaintiff.

Paul F. Markham, U. S. Atty., Stanislaw R. J. Suchecki, Asst. U. S. Atty., for defendants.

## OPINION

FRANCIS J. W. FORD, District Judge.

Petitioner, a seaman in the United States Coast Guard, brings this habeas

corpus proceeding asking the court to order his discharge from the service.

Petitioner Bates voluntarily enlisted in the United States Coast Guard Reserve on January 24, 1966 for a six-year period. After completing recruit and advanced training he was assigned on May 30, 1966 to Organized Reserve Training Unit, Port Security (O), South Portland, Maine. He was under a duty to attend scheduled inactive duty training drills and an annual two-week training period in accordance with existing orders and directives.

Bates was ordered to report to the Coast Guard Training Center, Yorktown, Virginia, on July 21, 1968 for two weeks of training. On July 11, 1968 he wrote to the Commander, First Coast Guard District stating he could "no longer support, in any way, this country's aggression against the Vietnamese", and further added that, "I have no intention of engaging in this training or in any other type of reserve training as long as the war in Viet Nam continues". Bates failed to report for the two-week training period, and beginning in July also failed to report for the required weekly training drills.

On August 2, 1968 Bates sent a letter to the Commandant of the United States Coast Guard stating that he wanted to be discharged as a conscientious objector. After an interchange of letters, the Coast Guard sent to Bates instructions as to the proper procedure for applying for discharge, together with the proper forms, and on September 13, 1968 he made formal application for discharge as a conscientious objector.

Meanwhile, on the basis of Bates' failure to attend the required weekly drills the Coast Guard determined that his participation in the Reserve Program was unsatisfactory, and ordered him to report for involuntary active duty for a period of 19½ months (a period which would bring his total time of active service to two years). He was granted a delay in reporting to allow him to make such preparations as he needed to secure evidence in his home area to support his claim for discharge. On September 30, 1968 he reported, passed his physical examination and was placed on active duty. He is still in an active duty status.

The Coast Guard proceeded with the processing of Bates' application for discharge in accordance with the provisions of DOD Directive 1300.6. A hearing was held at Boston on October 4, 1968 before a legal officer of the Coast Guard. Bates appeared with his own civilian counsel, was duly advised of his rights, and was allowed to make whatever statements and arguments, and present whatever supporting evidence he wished. The hearing officer held that Bates was not entitled to classification as a conscientious objector but did recommend that, although not technically entitled to it, Bates should be given non-combatant duty. The application was referred to the Director of Selective Service, whose office gave its opinion that Bates would not be classified under the Military Selective Service Act of 1967 as a conscientious objector. After review by the staff of the Commandant, United States Coast Guard, Bates' application for discharge was denied and on October 29, 1968 he was assigned to duty on the Cutter Fern, home-ported at Dubuque, Iowa, which is on aids to navigation duty and does not carry combatant weapons.

 In assigning Bates to active duty the Coast Guard acted under the authority of 10 U.S.C. § 673a, as implemented by Executive Order No. 11366 of August 4, 1967. Petitioner contends that § 673a applies only to the Department of Defense and not to the Coast Guard. However, § 673a by its own terms applies to "any member of the Ready Reserve of an armed force," and "armed forces" is defined to include the Coast Guard. 10 U.S.C. § 101(4).

 More basically, Bates contends that § 673a should be interpreted as not applying to him, or that if interpreted as so applying, it is unconstitutional.

In substance, his argument is that his enlistment in the reserve constituted a contract between him and the government, that under that contract and the law as it existed at the time of his enlistment, the government's only remedy in case he failed or refused to perform his training duties was to call him to active duty for a period of not more than 45 consecutive days, or to report his unsatisfactory participation to his Selective Service Board, thus subjecting him to be reclassified and drafted into the armed forces. Since § 673a was added as part of Public Law 90–40, 81 Stat. 100, enacted on June 30, 1967, after Bates' enlistment, he argues that to apply the law to him would amount to an unconstitutional impairment of his contract. So far as the Statement of Understanding which he signed as part of the contract provided for his being subject to an involuntary call to active duty "when otherwise authorized by law," this, he argues, applies only to authorization under existing law, and not under laws subsequently enacted.

These contentions of petitioner must be rejected, for the reasons set forth in the extended discussion of similar contentions made in a number of recent cases, with the reasoning of which this court agrees. Winters v. United States, 281 F.Supp. 289, affirmed per curiam, 2 Cir., 390 F.2d 879; Morse v. Boswell, 289 F.Supp. 812; Weber v. United States, 288 F.Supp. 491; Even v. Clifford, 287 F.Supp. 334; Pfile v. Corcoran, 287 F.Supp. 554.

■ Bates further contends that the Coast Guard's decision not to grant him a discharge as a conscientious objector was improper. As petitioner concedes, the scope of review of this question by this court is a very narrow one. The sole question is whether or not there was any basis in fact for the administrative decision of the Coast Guard.[1] United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Hammond v. Lenfest, 2 Cir., 398 F.2d 705; Brown v. McNamara, 3 Cir., 387 F.2d 150.

■ Petitioner had the burden of establishing that he was conscientiously opposed as a matter of religious training and belief to participation in war of any kind. Religious training and belief means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological or philosophical views or a merely personal moral code. It does include a belief which occupies in the life of the objector the same place as an orthodox belief in God holds in the life of an objector clearly qualified for exemption on the ground of conventional religious beliefs. United States v. Seeger, *supra,* at pp. 183, 184, 85 S.Ct. 850.

Bates is not now a member of any organized religious group. In youth he received training in the teachings of the Congregational and Presbyterian churches. He now says that from conversations with members of the Society of Friends and reading about their beliefs, his own beliefs are perhaps most closely aligned with those of the Friends. His own statement of his present beliefs may be represented by two paragraphs from his application for discharge:

"I believe in the supreme existence of the spirit of love. 'God is love.' I believe that when this spirit is alive in man, when we act in awareness of our brotherhood as men, we achieve a certain holiness and our human relationships improve by an immeasurable factor, a devine factor, if you will. The spirit of brotherly love is the *basis* of human relations. The concept is at the heart of the world's religions. Total commitment to this awareness is my goal, for this love must enter every aspect of human life, if ever we are to fulfill the promise of man.

1. There appears to be no contention that the procedural requirements of D.O.D. 1300.6 were not fully complied with in the processing of Bates' application.

"Warfare stems from the breakdown of human relationships. It involves the destruction of human life, the destruction of those things we have created out of love, the casting-aside of principles based on brotherhood. The act of war is a crime against humanity. To participate in war, in any way to support it, is to relegate the highest spirit of love to a position below the passions. And although, in the spirit of love, we must understand human failures in each other, we must struggle all the harder to act in a moral manner, that the failures be overcome."

In support of his application Bates submitted letters from a Coast Guard chaplain and three other clergymen expressing their opinion of the sincerity of his conscientious objection.

Bates voluntarily enlisted in the Coast Guard in 1966. At the time he expressed strong opposition to the Vietnam War and was advised to consider whether or not he was a conscientious objector. After consideration he decided not to claim conscientious objector status and enlisted.

On July 11, 1968, writing to the Commander, First Coast Guard District, he stated his reasons for not reporting for training camp duty as follows:

"I would like to take this opportunity to inform you that I have no intention of engaging in this training or in any other type of Reserve training as long as the war in Vietnam continues. Although I have the highest regard for the peacetime activities of the Coast Guard, I can no longer support, in any way, this country's aggression against the Vietnamese."

On August 2, 1968, he wrote to the Commandant, United States Coast Guard:

"I cannot conscientiously support my country's war effort in Vietnam, which I consider to be warfare's 'most horrible manifestation' at this time. Indeed, although my application for discharge on the grounds of conscientious objection may be denied, I shall refuse any further participation in Reserve activities, for I believe war to be a criminal violation against humanity."

The report of the psychiatrist required by D.O.D. 1300.6 based on an interview with Bates on October 2, 1968, states of his position: "He wants no part of any military 'system' which contributes in any way to the Viet Nam war effort."

The hearing officer was of the opinion that Bates is sincerely opposed to the use of force on an individual or organized basis as a solution to any of the problems confronting an individual or mankind generally. He concluded, however, that Bates' beliefs did not meet the test of being an opposition to all war based on a belief which met the test of United States v. Seeger, *supra*. Instead, his conclusion was that:

"I do not feel that SN BATES feelings are religious. In my opinion he espouses non-violent protest as an effective social mechanism of change and happens to feel Jesus Christ was an effective practitioner of that art. He therefore feels a social kinship with Jesus and chooses to call this religion. If he was truly religious and did espouse the tenets of the society of Friends, as he claims, I believe he would have done more than carry on a few casual conversations with members of the Society of Friends he has happened to meet. He probably lacks the insight to realize that his intense social views are not religious—not in response to something outside himself.

"Further I am of the opinion that SN BATES' personal philosophy has not changed since he chose to enlist in a minimum impact reserve program rather than risk induction into the Army. He consistently states that his feelings began to form in this regard prior to enlistment. He admits then being opposed to the Viet-Nam involvement and has since expressed exasperation that it has not ended. I feel these feelings have precipitated a public statement of the same views he had upon enlistment and a personal

protest in a manner calculated, perhaps subconsciously, to bring him into conflict with the Coast Guard."

The test, of course, is not whether or not the decision of the Coast Guard was correct, or whether this court would reach the same or a different conclusion, but solely whether there was a basis in fact for the decision. On consideration of all the evidence before the hearing officer, including Bates' conduct and his various statements as to his position, the court finds that there was an adequate basis in fact to support the conclusion of the hearing officer and the subsequent final decision of the Coast Guard that Bates was not entitled to discharge as a conscientious objector.

Judgment will be entered for defendants, dismissing the complaint.