JOE BAKER, Employee, v. STATE OF NORTH CAROLINA, Self Insurer.

(Filed 27 January, 1931.)

**1. Master and Servant F a—Employee within meaning of the act is person engaged in employment under any appointment of contract or hire.**

Whether one is an employee within the meaning of the Workmen's Compensation Act does not solely rest upon the existence of the technical relation of master and servant, but a person is an employee thereunder if he is engaged in employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, and includes all employees of the State or its political subdivisions except such as are elected by the people or the General Assembly or appointed by the Governor.

**2. Same—Workmen's Compensation Act should be liberally construed to effectuate the legislative intent.**

The legislative intent should be ascertained and given effect in construing the Workmen's Compensation Act, and its benefits should not be denied upon technical, narrow or strict construction.

**3. State E a—The State has consented to liability for injuries to its employees compensable under the Workmen's Compensation Act.**

The State of North Carolina has consented to liability for injuries to its employees other than the employees elected by the people or the General Assembly, or appointed by the Governor, whose injuries are compensable under the Workmen's Compensation Act.

**4. Master and Servant F a—Private in National Guard held entitled to compensation for injury sustained while performing duty.**

By statute the State has provided for payment in a certain manner to privates who have enlisted in the North Carolina National Guard, and a private therein who has taken the prescribed oath is an employee of the State within the meaning of the Workmen's Compensation Act, and where he has sustained an injury arising out of and in the course of the performance of his duties as an enlisted man he is entitled to the compensation prescribed by the statute. N. C. Const., Art. XII, sec. 2; C. S., 6821, 6823, 6864, 6889.

APPEAL by defendant from *Cowper, Special Judge,* at September Term, 1930, of WAKE, affirming an award of the Industrial Commission.

Joe Baker was a duly enlisted private in Battery A, 113th Field Artillery, North Carolina National Guard, and at the time of his injury, was regularly employed in executing the lawful commands of his superior officers and under the orders issued by the office of the Adjutant General of the North Carolina National Guard. At the time of the injury, he was cranking a tractor in connection with his duties as a member of the maintenance section of the battery. The engine "kicked" and the crank struck his right kneecap, chipping off a part of the bone. As an enlisted man in Battery A, the plaintiff received from the State fifty cents (50c) per drill, and was required to drill by the State of North Carolina once a week, the drill night being designated as Monday night of each week, from eight to nine-thirty p.m. For the same drill period the Federal Government paid one dollar a drill. At the time of the injury, the plaintiff was employed in a cafe in Greenville, North Carolina, at a salary of $20.00 per week, and board and lodging.

The plaintiff took the following oath of enlistment: "I do hereby acknowledge to have voluntarily enlisted this 26 August, 1927, as a soldier in the National Guard of the United States and of the State of North Carolina, for a period of three years, under the conditions prescribed by law, unless sooner discharged by proper authority, and I do agree to accept from the United States and the State of North Carolina such pay, rations, and clothing or other allowances as are or may be established by law; and I do solemnly swear that I will bear true faith and allegiance to the United States of America and the State of North Carolina, and that I will serve them honestly and faithfully against all their enemies whomsoever, and that I will obey the orders of the President of the United States and of the Governor of the State of North Carolina, and of the officers appointed over me according to law and the rules of war."

The Industrial Commission found the facts to be as follows:

1. That the State of North Carolina has, by legislative enactment, waived its sovereign rights and its exemption of liability in so far as these rights and exemptions apply to injuries to its employees by accidents that arise out of and in the course of their employment; that neither the State nor its employees may reject the act and that the State is a self-insurer of its compensation liability.

2. That the plaintiff was a regular and duly enlisted militiaman of Battery A, 113th Field Artillery, North Carolina National Guard, and as such was an employee of the State when engaged upon the regular duties of his employment as a member of the National Guard of the State.

3. That on 10 February, 1930, while engaged upon his duties as National Guardsman, the plaintiff sustained an injury by accident that arose out of and in the course of his employment; and that the plaintiff at the time of the hearing was disabled as a result of such injuries, which have not assumed a permanent status.

4. The plaintiff's average weekly wage paid by the State of North Carolina for service as a militiaman was fifty cents (50c) and his average weekly wage paid by the Federal Government was $1.00, and that the average weekly wage earned in civilian employment was $27.00.

5. That the employment was not casual, but was in the usual course of the business of the State.

Upon the foregoing facts the Industrial Commission awarded compensation to the plaintiff and the defendant appealed to the Superior Court and on appeal the award was affirmed. The defendant then appealed to the Supreme Court upon assigned error.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State, appellant.*

*J. C. Lanier and W. T. Joyner for appellee.*

ADAMS, J. At the time of his injury the plaintiff was an enlisted private in the North Carolina National Guard. In determining his legal relation to the State we may observe that the National Guard is an organization of the State militia, which does not become a part of the United States Army until the Congress declares an emergency to exist which calls for its services in behalf of the nation. *Bianco v. Austin,* 204 App. Div. (N. Y.), 34; *S. v. Johnson,* 202 N. W. (Wis.), 191; 32 U. S. C. A., sec. 1, *et seq.;* U. S. Compiled Sts., Supplement, 1925, sec. 1715a, *et seq.;* N. C. Code, 1927, sec. 6808, *et seq.* The National Guard being a State institution or agency, the decisive question is whether the plaintiff was an employee of the State and as such entitled to an award under the Workmen's Compensation Law. P. L., 1929, ch. 120.

The word "employment," as used in this act, includes employment by the State and all its political subdivisions. Section 2(a). The word "employee" means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, and as to those employed by the State all officers and employees of the State except such as are elected by the people or the General Assembly or are appointed by the Governor.

In *Moore v. State of North Carolina, post,* 300, we said that the phrase, "engaged in an employment under any appointment or con-

tract of hire," embodies the two notions of an employment under an appointment and an employment under a contract of hire. It is contended by the appellant that a contract of hire imports a contractual relation or an agreement to labor for a stipulated wage or compensation, and that to give effect to this phrase it is necessary to show that the relation of master and servant must have been established in accordance with recognized legal standards.

It may not be amiss to examine some of the cases cited in the appellant's brief in support of this position. In *Sibley v. State*, L. R. A., 1916-C 1087, the Connecticut Supreme Court of Errors held that a duly elected sheriff while performing the duties of his office was not working under a contract with the State, the statutory definition of "employee" in that commonwealth being "any person who has entered into or works under any contract of service or apprenticeship with any employer." In *Hillestad v. Industrial Insurance Commission*, 141 Pac. (Wash.), 913, Ann. Cas., 1916-B 789, the question was whether a boy under the age of fourteen years had been employed by the respondents who owned and operated a shingle mill, and the Court said that under the statute in effect the law contemplated that the relation between the employer and the employee should possess some element of certainty. The opinion delivered in *Hinds v. Department of Labor and Industries*, 62 A. L. R. (Wash.), 225, declares that an air pilot associated with the owner of an airplane and flying field, who takes up passengers and receives a percentage of the gross compensation from flights, is a workman within the meaning of a statute which recognizes that the relation of employer and employee may exist, even though payment may be piecemeal or an allowance in the way of profit sharing. These and other cited cases are illustrative but are not conclusive in the case before us. Unquestionably an agreement between master and servant for the payment of a fixed wage for the performance of work may be a contract of hire, but are these the only conditions under which the relation of employer and employee may exist as contemplated by the Compensation Law? We think not. It has been held that a person who is procured by an employee to act as his substitute, or to assist him in his duties, the employer assenting, occupies the position of an employee, *Carter v. Woods Bros. Const. Co.*, 244 Pac. (Kan.), 1; that an employee "loaned" by one company to and subject to the control of another, is a temporary employee of the latter, though the wages are not fixed, *Tarr v. Hecla Coal & Coke Co.*, 109 At. (Pa.), 224, *Sgattone v. Mulholland*, 58 A. L. R. (Pa.), 1463; and that an agreement between two farmers for mutual assistance in filling their silos and ice houses, although their compensation was working one for the other, is a contract of service and employment. *Smith v. Jones*, 43 A. L. R. (Conn.), 952.

These and similar decisions accord with the theory that the compensation act "should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow, and strict interpretation." *Johnson v. Hosiery Co.,* 199 N. C., 38. So, it seems to have been assumed or conceded that, under the provisions of an act analogous to ours, a member of the National Guard injured while at target practice, if at the time in the service of the State and not of the United States, was entitled to compensation from the State under the Wisconsin Workmen's Compensation Act, and being in the service of the State he was given compensation. *S. v. Johnson, supra.* See *Rector v. Cherry Valley Timber Co.,* 13 A. L. R., 1247, in which it was held that whether the plaintiff entered the army voluntarily or was drafted, his presence there must be viewed as a voluntary service in the performance of a duty he owed the government.

Two facts may be regarded as established: the plaintiff when injured was in the service of the State and his service was voluntary. Was his status contractual? It is provided by statute that enlisted men shall not be recognized as members of the National Guard until they shall have signed an "enlistment contract" and taken an oath of enlistment. The General Assembly shall provide for paying the militia when called into active service. Constitution, Art. XII, sec. 2. The contract of service is one made under the conditions prescribed by law. C. S., 6821. Discipline must conform to the system prescribed for the regular army, and training to the provisions of an act of the Congress. C. S., 6823. The State furnishes enlisted men with uniform and equipment, pays them when called into the service of the State or in aid of the civil authorities, and provides compensation for each armory drill. C. S., 6824, 6864, 6889. Whether such remuneration may or may not be adequate is immaterial. That the "enlistment contract" is binding seems generally to be granted. *United States v. Grimley,* 137 U. S., 147, 34 L. Ed., 636; *In re Morrissey, ibid.,* 157, 34 L. Ed., 644; *S. v. Long,* 66 So. (La.), 375; *Acker v. Bell,* 57 So. (Fla.), 356. The record shows, in any event, that the plaintiff was voluntarily in the service of the State and subject to its direction and control. This is one of the tests of employment; and under the liberal interpretation given to the Compensation Law we should hesitate to hold that there can be no employment within the meaning of the act unless there happens to exist the technical relation of master and servant.

By waiving the immunity of the State with respect to all its officers and employees, excepting those specifically excluded, did not the General Assembly intend to make provision for their compensation when injured in the service contemplated in their contract of enlistment? In their brief the Attorney-General and his assistant intimate that sound policy

may warrant the State's assumption of this burden, but they do not agree that under the present law the burden has been assumed. After an examination of the authorities considered in view of the several compensation laws which they interpret we are of opinion that the plaintiff's case is within the provisions of the act in question and that the judgment of the Superior Court should be affirmed.

Affirmed.