Jerry **COCHRAN**, Appellant,

v.

**MISSOURI NATIONAL GUARD,**
Respondent.

No. 76961.

Supreme Court of Missouri,
En Banc.

Feb. 21, 1995.

Michael X. Edgett, Clinton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Maria W. Campbell, Asst. Atty. Gen., Jefferson City, for respondent.

## APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

ROBERTSON, Judge.

The issue in this case is whether the Missouri Workers' Compensation law covers a member of the Missouri National Guard during his two-week annual training pursuant to 32 U.S.C. § 502. The Labor and Industrial Relations Commission ruled that injuries received while on § 502 training were not covered by the Missouri Workers' Compensation law. The court of appeals reversed. We granted transfer because of the general interest and importance of the issues presented and have jurisdiction. Mo. Const. art. V, § 10. The ruling of the Labor and Industrial Relations Commission is affirmed.

### I.

The facts are not in dispute. Pursuant to 32 U.S.C. § 502, the Missouri Adjutant General ordered the appellant, Jerry Cochran, a member of the Missouri National Guard and the Army National Guard, to undertake his two-week annual training at Fort Chaffee, Arkansas, from May 30, 1992 through June 13, 1992. For that period of time, Cochran received compensation from the federal government. On June 7, 1992, Cochran twisted his left leg causing his left knee to strike the side of the Cobra helicopter he was attempting to enter. Cochran experienced immediate pain and swelling. When he returned from the flight, he reported the injury to his platoon sergeant who instructed him to see a doctor. A physician's assistant gave him aspirin, but apparently no further treatment. He completed the training camp. Throughout training, the swelling and pain continued, and he walked with a limp.

Cochran returned to his home in Clinton, Missouri, on Friday, June 12, 1992. The following Monday, June 15, 1992, he returned to his job at a plumbing and heating company in Clinton. That afternoon, he stepped off the backhoe upon which he was working and his left leg collapsed. By the end of the day, Cochran could barely stand on his leg. He went to the emergency room that evening following work. After consultation with several physicians, Cochran ultimately underwent arthroscopic knee surgery on August 24, 1992. His physician released Cochran to return to work on November 30, 1992.

### II.

The issue in this case is *not* whether Cochran's knee injury occurred during his two-week training at Fort Chaffee, Arkansas. It seems beyond reasonable argument that the injury he sustained and which ultimately required surgery occurred during that two-week period. Instead, the issue in this case is whether the Missouri Workers' Compensation law provides benefits to Cochran for the injuries he received while on active training duty pursuant to 32 U.S.C. § 502.

The parties argue that this case turns on whether Cochran performed federal or state active duty at the time of his injury. The Missouri National Guard argues that it is not responsible for compensating Cochran because he was on active duty as a member of

the Army National Guard of the United States and not the state militia when he hurt his knee. Cochran urges that on June 7, 1992, he served under orders of the Missouri adjutant general issued pursuant to authority of the governor; he was on "active state duty," he contends, making the Missouri National Guard liable for his workers' compensation.

For the reasons that follow, we disagree with the federal-state distinction argued by the parties. Instead, this case turns on the nature of the orders by which Cochran found his way to Fort Chaffee and the clear language of the statute extending workers' compensation coverage to members of the Missouri National Guard injured while on active state duty ordered by the governor.

Section 41.900, RSMo 1994, provides: "Chapter 287, RSMo, dealing with workers' compensation, applies to members of the Missouri organized militia *when ordered to active state duty by the governor.*" [Emphasis added.]

Section 40.005(2), RSMo 1994, defines "active state duty." First, active state duty includes "inactive duty training and active duty for training to include all duty and training performed under title 32, United States Code Sections ... 502...." § 40.005(2)(a). Second, a member of the militia serves active state duty "[w]hen ordered to active state duty *by the governor under authority vested in the governor by law.*" [Emphasis added.]

■■■■ Cochran argues that Section 40.005.1(2), RSMo 1994, contains the appropriate definition of "active state duty." But Chapter 40 addresses questions of military justice.

Sections 40.005 to 40.490 shall be construed as to effectuate their general purpose and, so far as practicable, to make the law uniform with the law of the United States, especially as embodied in the Uniform Code of Military Justice.

The definitional section, Section 40.005.1 begins "[a]s used in section 40.005 to 40.490,

unless the context clearly otherwise requires; ...." A workers' compensation proceeding is not a military court martial or military court of inquiry. A workers' compensation proceeding is not covered by laws relating to military justice. Thus, unless the context clearly requires it, the definitions in Chapter 40 have no meaning outside Chapter 40.

In order to determine the meaning of the phrases used in Section 41.900, we must begin with the provisions of Chapter 41. Section 41.480, RSMo 1994, authorizes the governor to call the militia to duty.

1. The governor may, when in his opinion the circumstances so warrant, call out the organized militia or any portion or individual thereof to execute the laws, suppress actual and prevent threatened insurrection and repel invasion. The governor, if in his judgment the maintenance of law and order will thereby be promoted, may by proclamation declare ·martial law throughout the state or any part thereof.

2. The governor may, when in his opinion circumstances so warrant, call out the organized militia or any portion thereof as he deems necessary to provide emergency relief to a distressed area in the event of earthquake, flood, tornado or other actual or threatened public catastrophe creating conditions of distress or hazard to public health and safety beyond the capacities of local or other established. agencies.

Section 41.470, RSMo 1994, states that:

1. Members of the organized militia, or any portion or individual thereof, may be ordered to active duty to perform military training or special duty, or to participate in small arms gunnery competitions in this state or in any other state or territory or the District of Columbia, or in any fort, camp, air base, installation or reservation of the United States. Cruise duty ordered to the naval militia may be required to be performed on United States vessels.

\* \* \* \* \* \*

3. With the approval of the governor, the adjutant general shall administer the

provisions of this section and effect orders to active duty. Orders shall be effective as orders of the governor to active duty for purposes of section 40.490, RSMo.

4. Members of the organized militia shall not receive from the state the pay and allowances otherwise provided by law for active duty under this section when eligible for pay and allowances from federal funds, nor are they entitled to paid leaves of absence while on duty under this section for purposes of section 105.270, RSMo.

Section 40.490, RSMo 1994, states that:

Members of the state military forces of this state who are ordered to active state duty by the governor shall, upon being relieved from such duty, be entitled to the same reemployment rights provided by Title 38 of the United States Code, the Revised Statutes of Missouri, and all amendments thereto.

■ This lengthy recitation of the legislature's language is intended to show that active state duty ordered *by the governor* is a distinct species of active state duty limited to those occasions when the governor calls out the state militia pursuant to Section 41.480. We conclude that Section 41.900 does not apply when a member of the Army National Guard serves federal purposes as a federal employee and not as a member of the state militia called to service by the governor under state law.

■ Even were we to concede, as we do not, that the *definition of active state duty* contained in Section 40.005.1(2) defines active state duty for all purposes relevant to the Missouri militia, we would reach the same result. The legislature has carefully used the phrase "by the governor" when it wished to distinguish between active duty for training or special duty under federal auspices (Sections 40.005.1(2)(a)), and active state duty ordered by the governor under authority granted the governor by state law. Section 40.005.1(2)(b). Even using the Section 40.005.1(2) definition Cochran believes we should use, we conclude that the phrase "when ordered to active state duty by the governor" as used in Sections 40.005.1(2)(b) and 41.900 applies only to orders of the governor calling the militia to duty under state law.

■ Undeterred, Cochran argues that orders of the adjutant general are tantamount to orders of the governor, citing Section 41.470.3. While it is true that Section 41.470.3 makes orders of the adjutant general "effective as orders of the governor to active duty," the legislature expressly limited that effect to "purposes of section 40.490, RSMo." We find glaring the omission of reference to either Section 41.900 or Chapter 287 in Section 41.470.3; the omission indicates an intent in the legislature contrary to Cochran's position.

### III.

Absent any statutory basis for Cochran's claim against the Missouri National Guard for compensation of the injuries he received while on active training duty for the federal government, the ruling of the Labor and Industrial Relations Commission is affirmed.

All concur.