FELISA R. BACCUS, EMPLOYEE, PLAINTIFF v. N.C. DEPARTMENT OF CRIME CONTROL
& PUBLIC SAFETY, EMPLOYER, SELF-INSURED (KEY RISK MANAGEMENT
SERVICES, SERVICING AGENT), DEFENDANTS

No. COA08-204

(Filed 20 January 2009)

**Workers' Compensation— National Guard member—injured
during training—not a state employee**

The Industrial Commission did not have jurisdiction in a
workers' compensation case, and should not have awarded ben-
efits to a member of the North Carolina National Guard injured
during military training in California. Plaintiff was not an em-
ployee within the meaning of N.C.G.S. § 97-2(2), which includes
those instances where a North Carolina National Guard member
is called into service of the State of North Carolina; operates
under the command and control of the Governor pursuant to
state law; and is paid by the State with state funds. Plaintiff was
injured while training pursuant to Title 32 of the U.S. Code and
was paid with federal and not state funds.

Appeal by defendants from an opinion and award entered 27
November 2007 by the North Carolina Industrial Commission. Heard
in the Court of Appeals 23 September 2008.

*Lewis & Daggett, Attorneys at Law, P.A., by Griffis C. Shuler
and Christopher M. Wilkie, for plaintiff-appellee.*

*Attorney General Roy A. Cooper, III, by Special Deputy At-
torney General Sharon Patrick-Wilson, for defendant-
appellants.*

1

BACCUS v. N.C. DEP'T OF CRIME CONTROL & PUB. SAFETY

[195 N.C. App. 1 (2009)]

HUNTER, Robert C., Judge.

Defendant North Carolina Department of Crime Control and Public Safety ("defendant") appeals from an opinion and award of the North Carolina Industrial Commission ("the Commission") awarding Felisa R. Baccus ("plaintiff"), a former member of the North Carolina National Guard, workers' compensation benefits due to injuries she sustained while participating in military training at Fort Hunter-Liggett in California. The sole issue on appeal is whether plaintiff was an "employee" as defined in N.C. Gen. Stat. § 97-2(2) (2007), and consequently, whether the Commission possessed subject matter jurisdiction. Deputy Commissioner Crystal Redding Stanback concluded plaintiff was an employee as defined in section 97-2(2) and awarded her compensation. The Commission affirmed with some modifications. After careful review, we vacate the opinion and award.

## I. Background

In 2003, plaintiff was a member of the North Carolina Army National Guard and assigned to a unit and company based out of Winston-Salem, North Carolina. Plaintiff was also employed in a civilian capacity as a personal nursing assistant.

On or about 25 March 2003, plaintiff was "ordered to active duty for training (ADT)" from 11 May 2003 until 25 May 2003 and instructed to report to Eastover, South Carolina, to attend a motor transport operator course. The order listed its authority as 32 U.S.C. § 502(f) and stated that it was "contingent upon Congress enacting appropriations[.]" The order contained the following heading "State of North Carolina, Office of the Adjutant General" and was signed "for the Adjutant General" by "Charles E. Jackson, Col, MP, NCARNG G3[.]" On or about 14 April 2003, plaintiff received an amended order which changed the dates and location for the training; pursuant to the amended order, plaintiff was required to report from 2 May 2003 until 17 May 2003 at Fort Hunter-Liggett in California.

On 8 May 2003, while plaintiff was training at Fort Hunter-Liggett in California pursuant to the amended order, she sustained injuries while participating in a training exercise. In an effort to avoid a truck that was backing up towards her, plaintiff jumped onto a chain link fence and tried to climb it; her legs became entangled in the fence, causing injuries to her hip, back, and legs.

Plaintiff was incapacitated and unable to perform her military or civilian employment from 8 May 2003 until 5 November 2003. As a

BACCUS v. N.C. DEP'T OF CRIME CONTROL & PUB. SAFETY

[195 N.C. App. 1 (2009)]

result of her injuries, she received $2,676.80 per month in gross incapacitation pay from the federal government from 8 May 2003 until 5 November 2003. In addition, upon filing for severance pay with the Veterans' Administration of the federal government, plaintiff was found eligible for benefits based upon a total disability rating of thirty percent (30%). She was awarded $330.00 per month in severance pay for approximately one year, after which her benefits increased to $439.00 per month and continue for the rest of her life. At the time defendant filed this appeal, this was the only compensation plaintiff had received as a result of her injuries. In addition to the federal compensation, defendant paid plaintiff approximately $273.00 per month for participating in her monthly/weekend drill for the North Carolina National Guard from the time she sustained her injuries (8 May 2003) until approximately June 2004.

Due to her injuries and physical limitations, plaintiff was discharged from the Army Reserve effective 13 August 2004; however, she was not simultaneously discharged from the North Carolina National Guard. She was later determined to be physically unfit to continue with the North Carolina National Guard. Since sustaining her injuries, plaintiff has not been able to return to her civilian employment as a nursing assistant. With the exception of a brief period of employment with Church's Chicken, a job which plaintiff had to leave due to her physical limitations, she has not returned to civilian employment in any capacity since 3 February 2004.

In September 2004, plaintiff filed for state workers' compensation benefits for the injuries she sustained on 8 May 2003. Defendant denied liability asserting that plaintiff "was not on State active duty under orders of the Governor at the time of the alleged injury; therefore, she would not be considered an 'employee' under the [North Carolina] Workers' Compensation Act[,]" and the Commission did not possess subject matter jurisdiction. Plaintiff argued that while at Fort Hunter-Liggett, she was on "State active duty under orders of the Governor" and that the Commission did have subject matter jurisdiction. The Commission found and concluded that plaintiff was an employee as defined by section 97-2(2), specifically that she was on "active duty training with the North Carolina National Guard under orders of the Governor." Defendant appeals.

## II. Analysis

In order to determine whether the Commission had subject matter jurisdiction, we must: (1) interpret what "State active duty under

orders of the Governor" means, an issue of first impression for this Court; and (2) decide whether the training plaintiff was participating in on 8 May 2003, i.e., active duty for training pursuant to 32 U.S.C. § 502(f), fits within that definition.

> It is well settled that to be entitled to maintain a proceeding for compensation under the Work[ers'] Compensation Act the claimant must have been an employee of the alleged employer at the time of his injury . . . . Thus, the existence of the employer-employee relationship at the time of the accident is a jurisdictional fact. . . . [T]he finding of a jurisdictional fact by the Industrial Commission is not conclusive on appeal even though there be evidence in the record to support such finding. The reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record. The claimant has the burden of proof that the employer-employee relation existed at the time the injury by accident occurred.

*Lucas v. Stores*, 289 N.C. 212, 218, 221 S.E.2d 257, 261 (1976) (internal citations omitted). "When interpreting a statute, we ascertain the intent of the legislature, first by applying the statute's language and, if necessary, considering its legislative history and the circumstances of its enactment." *Shaw v. U.S. Airways, Inc.*, 362 N.C. 457, 460, 665 S.E.2d 449, 451 (2008) (citations omitted). Further,

> "[T]he Workers' Compensation Act should be liberally construed, whenever appropriate, so that benefits will not be denied upon mere technicalities or strained and narrow interpretations of its provisions. . . . [S]uch liberality should not, however, extend beyond the clearly expressed language of those provisions, and our courts may not enlarge the ordinary meaning of the terms used by the legislature or engage in any method of 'judicial legislation.' [Finally], it is not reasonable to assume that the legislature would leave an important matter regarding the administration of the Act open to inference or speculation; consequently, the judiciary should avoid 'ingrafting upon a law something that has been omitted, which [it] believes ought to have been embraced.'"

*Id.* at 463, 665 S.E.2d at 453 (citation omitted; final alteration in original).

N.C. Gen. Stat. § 97-2(2) provides in pertinent part: "The term 'employee' shall include members of the North Carolina national

guard while on State active duty under orders of the Governor and members of the North Carolina State Defense Militia while on State active duty under orders of the Governor."[1] In its opinion and award, the Commission did not actually interpret the meaning of section 97-2(2). Rather, it simply noted that the statute had been amended in 1999 and that it believed defendant's interpretation was too narrow. Specifically, the Commission concluded:

> 5. The amendment to the statute clarified the language to specify that it covered more than injuries at drill, in camp, and while on *special* duty under orders of the Governor. The amendment clarifies that members of both the North Carolina National Guard and the North Carolina State Guard are considered employees under the North Carolina Workers' Compensation Act while on State active (not just special) duty under orders of the Governor. It appears that the amendment clarified the intent of the legislature to make the statute more inclusive, rather than exclusive. Defendant's interpretation would preclude State workers' compensation coverage for members of the North Carolina National Guard while at camp or participating in drills even in North Carolina unless the Governor issued a special order. . . . [T]he Full Commission is not persuaded that the statutory intent is as narrow as Defendant argues.

On appeal, defendant argues, as it did below, that "State active duty under orders of the Governor" only includes those instances where North Carolina National Guard members are called into service of the State by the Governor in the event of a state emergency,

---

1. The North Carolina National Guard and the North Carolina State Defense Militia are distinctly different components of our organized State militia. The North Carolina National Guard consists of "regularly commissioned, warrant and enlisted personnel between such ages as may be established by regulations promulgated by the secretary of the appropriate service[.]" N.C. Gen. Stat. § 127A-3 (2007). The State Defense Militia "consist[s] of commissioned, warrant and enlisted personnel called, ordered, appointed or enlisted therein by the Governor under the provisions of Article 5 of . . . Chapter [127A.]" N.C. Gen. Stat. § 127A-5 (2007). National Guard members "receive federal recognition by the United States government [and] hold a dual status both as State troops and as a reserve component of the armed forces of the United States." N.C. Gen. Stat. § 127A-29 (2007). In contrast, State Defense Militia members cannot be members of a reserve component of the armed forces. N.C. Gen. Stat. § 127A-80(b). Finally, unlike with the National Guard which can be called into federal military service, the State Defense Militia "shall not be called, ordered, or in any manner drafted, as such, into the military service of the United States[.]" N.C. Gen. Stat. § 127A-80(d) (2007).

such as a natural disaster, and that it does not include training.[2] In all other circumstances, defendant claims North Carolina National Guard members are federal employees, paid with federal funds, who exclusively receive federal benefits. Finally, defendant argues the current statute is clear and unambiguous and must be implemented according to the plain meaning of its terms.

Plaintiff does not make any effort to define "State active duty." Rather, plaintiff advances the reasoning contained in the Commission's conclusion of law number five cited *supra*, i.e., that defendant's interpretation is too narrow, especially because North Carolina National Guard members who are injured while training in North Carolina would not be covered under the Act. Plaintiff further asserts that when a North Carolina National Guard member receives orders pursuant to 32 U.S.C. § 502(f): (1) he or she is under the command and control of the Governor and (2) the Governor effects said command and control through orders issued by the State Adjutant General. Consequently, she asserts that orders issued by the Adjutant General pursuant to 32 U.S.C. § 502(f) are "orders of the Governor."

The Workers' Compensation Act does not define "State active duty" or "under orders of the Governor." Consequently, we review the statute's legislative history. Section 97-2(2) was amended in 1999; prior to the amendment, the statute provided:

> The term "employee" shall include members of the North Carolina national guard, except when called into the service of the United States, and members of the North Carolina State guard, and members of these organizations shall be entitled to compensation for injuries arising out of and in the course of the performance of their duties at drill, in camp, or on special duty under orders of the Governor.

N.C. Gen. Stat. § 97-2(2) (1991).

Plaintiff asserts the 1999 amendment was intended to make workers' compensation coverage broader and more inclusive for North Carolina National Guard members. She further contends that this Court's decisions in *Britt v. N.C. Dept. of Crime Control and Public Safety*, 108 N.C. App. 777, 425 S.E.2d 11, *disc. review denied*, 333

---

2. The Governor's power to order National Guard members to respond to state emergencies is set out in N.C. Gen. Stat. § 127A-16(a) (2007). Also, N.C. Gen. Stat. § 127A-16(b) provides that the Governor, as commander in chief, can order North Carolina National Guard members to a "State Active Duty status" to assist with certain formal government activities. We discuss these provisions *infra*.

N.C. 536, 429 S.E.2d 554 (1993), and *Duncan v. N.C. Dept. of Crime Control and Public Safety*, 113 N.C. App. 184, 437 S.E.2d 654 (1993), demonstrate that she is an employee under the current, more inclusive statutory definition. In those cases, we respectively held that: (1) a North Carolina National Guard member, who was injured while completing basic Army training camp (" 'initial active duty training' ") in Alabama pursuant to 10 U.S.C. § 511(d)[3] (*Britt*, 108 N.C. App. at 779-80, 425 S.E.2d at 13); and (2) a North Carolina National Guard member who was injured in a jeep accident while returning to his local unit following the completion of a routine weekend drill at Fort Bragg (*Duncan*, 113 N.C. App. at 184-86, 437 S.E.2d at 654-55), were employees within the ambit of section 97-2(2).

Defendant argues the 1999 amendment was intended to narrow the provision of benefits. Specifically, defendant asserts it was intended to limit workers' compensation benefits to North Carolina National Guard members who are injured while responding to a state emergency, such as a natural disaster or civil unrest, pursuant to a specific call to "State active duty" by the Governor. Defendant also asserts that *Britt* and *Duncan* are inapplicable because: (1) they were decided pursuant to the more inclusive, pre-amendment definition; (2) under current federal law, National Guard members are members of the Army at all times; and (3) the 1999 amendment deleted the language stating that National Guard members are employees while performing their duties at camp or drill.

The legislative record surrounding the 1999 amendment is scant. After examining what information is available, it is difficult to definitively conclude whether the amendment was intended to narrow or broaden the statutory definition. Session Law 1999-418 was entitled: "An Act to Clarify When Members of The North Carolina National Guard and North Carolina State Guard Are Employees Subject to the Workers' Compensation Act."[4] By stating that its intent was to clarify

---

3. Section 511(d) has since been redesignated as 10 U.S.C. § 12103(d).

4. Session Law 1999-418 originated as Senate Bill 877 and was first assigned to the Senate Judiciary II Committee. At a 20 April 1999 meeting of this committee, the bill "was explained by [its sponsor] Senator Kerr" and by "Jon Williams, with the NC Department of Crime Control and Public Safety[.]" *Minutes of Senate Judiciary II Committee*, April 20, 1999, 1999 General Assembly, First Regular Session (Senate Bill 877). Unfortunately, these explanations are not available for our review. A bill analysis prepared by legislative staff counsel for the meeting states that the law "amends the definition of 'employee' under the North Carolina Worker[s'] Compensation Act to include members of the North Carolina national guard and members of the North Carolina state guard *while on State active duty under orders of the Governor.*" *Id.* (bill analysis by Committee Co-Counsel Brenda J. Carter).

rather than to codify, we believe the legislature intended to correct some aspect of this Court's interpretations in *Britt* and *Duncan* and that these cases informed "the circumstances of [the amendment's] enactment." *Shaw*, 362 N.C. at 460, 665 S.E.2d at 451. Consequently, we examine the analysis and reasoning presented in those cases.

In *Britt*, 108 N.C. App. at 779, 425 S.E.2d at 13, this Court based its conclusion that a North Carolina National Guard member injured while participating in Initial Active Duty for Training pursuant to 10 U.S.C. § 511(d) was an employee within the ambit of the Workers' Compensation Act in part on our Supreme Court's decision in *Baker v. State*, 200 N.C. 232, 234, 156 S.E. 917, 918 (1931). In *Baker*, our Supreme Court stated that "the National Guard is an organization of the State militia, which does not become a part of the United States Army until the Congress declares an emergency to exist which calls for its services in behalf of the nation." *Id.* Because an emergency situation did not exist when the plaintiff in *Britt* was ordered to perform his mandatory training, the Court essentially concluded that he was not " 'called into the service of the United States[.]' " *Britt*, 108 N.C. App. at 778, 425 S.E.2d at 12 (citation omitted). The Court also reasoned that the plaintiff was covered under the Act given the explicit language stating that National Guard members were covered for, *inter alia*, injuries " 'arising out of and in the course of the performance of their duties' " at drill and in camp. *Id.* (citation omitted).

In *Duncan*, this Court followed the reasoning advanced in *Britt* in concluding that a North Carolina National Guard member injured while returning to his local unit following a routine weekend drill was an employee as defined by section 97-2(2). There, the North Carolina Department of Crime Control and Public Safety raised similar arguments to those it advances in the instant case, specifically that the plaintiff: Was not an employee as defined in the Workers' Compensation Act because he had been called into service of the United States for a weekend drill,[5] was an employee of the federal government at the time of his injury, and had received federal compensation

_____

5. The opinion does not specify the statutory authority pursuant to which the plaintiff was called to weekend training. However, it would appear to be 32 U.S.C. § 502(a) (2000), which provides: "Under regulations to be prescribed by the Secretary of the Army . . . each company, battery, squadron, and detachment of the National Guard, unless excused by the Secretary concerned, shall . . . assemble for drill and instruction . . . at least 48 times each year[.]" *See also* Steven B Rich, *The National Guard, Drug Interdiction and Counterdrug Activities, and Posse Comitatus: The Meaning and Implications of "In Federal Service,"* 1994 Army Law. 35, 40, n.51 [hereinafter Rich, *The National Guard*] (National Guard weekend drills are performed under the authority of 32 U.S.C. § 502(a)).

benefits from the federal government. The Court rejected the defendant's contentions, and because the Commission had allowed the defendant a "credit" for the incapacitation pay he had received from the federal government, the Court concluded it was not permitting "double recovery" by affirming the award of compensation. *Duncan*, 113 N.C. App. at 186, 437 S.E.2d at 655.

In the instant case, neither defendant nor plaintiff support their arguments as to what "while on State active duty under orders of the Governor" means, or perhaps stated more accurately what the parties contend it does not mean, with any real discussion of or citation to legal authority. Rather, both support the bulk of their respective arguments with citation to general web sites containing generic, unauthoritative information. In considering the statutory language, the legislative record, and the circumstances of the 1999 amendment's enactment, including this Court's decisions in *Britt and Duncan*, it seems evident that the phrase "while on State active duty under orders of the Governor" differentiates between active service to the State of North Carolina and service to the federal government and includes those instances when a National Guard member is operating under the Governor's command and control pursuant to a specific call to state service. Also, the redaction of the drill and camp language would appear to indicate that the 1999 amendment was enacted with the intent of eliminating workers' compensation coverage for training, i.e., that it was restrictive in intent.

Keeping in mind the aforementioned rules of statutory construction, we do not believe the term "State active duty" is unambiguous and note that the interpretations respectively advanced by defendant and plaintiff both require us to read words into the statute that are not there.[6] Given that (1) section 97-2(2) appears to distinguish between state and federal service, (2) both parties' arguments implicate the state and federal functions of the National Guard, and (3) the National Guard involves a unique, dual state-federal structure, we next consider the broader universe of North Carolina law as well as federal law in an effort to construe the meaning of "State active duty" in section 97-2(2).[7]

---

6. Thus, we suggest the legislature may want to amend section 97-2(2) to include a definition of "State active duty."

7. We focus our discussion on chapter 127A of the North Carolina General Statutes, which is entitled "Militia," and Titles 10 and 32 of the United States Code, which are respectively entitled "Armed Forces" and "National Guard."

"State active duty" is not defined in any provision of the North Carolina General Statutes, the North Carolina Administrative Code, nor the United States Code. Nevertheless, as discussed *infra*, upon reviewing chapter 127A of the North Carolina General Statutes and Titles 10 and 32 of the United States Code, we ultimately conclude that plaintiff was not "on State active duty under orders of the Governor" when she sustained her injuries.

### A. Additional North Carolina Law (Chapter 127A)

Chapter 127A specifically deals with the organization and administration of the State militia, of which the North Carolina National Guard is a part. N.C. Gen. Stat. § 127A-3. N.C. Gen. Stat. § 127A-16 is the only statutory provision which both encompasses the power of the Governor to call up the North Carolina National Guard and also uses the "State Active Duty" terminology. It provides:

> (a) The Governor shall be commander in chief of the militia and shall have power to call out the militia to execute the laws, secure the safety of persons and property, suppress riots or insurrections, repel invasions and provide disaster relief.

> (b) The Governor shall have the additional power, subject to the availability of funding, to place individuals, units, or parts of units of the North Carolina National Guard in *a State Active Duty status* to assist with the planning, support, and execution of activities connected with the swearing in and installation of the Governor and other members of the Council of State.

*Id.* (emphasis added). Thus, pursuant to section 127A-16, at the very least, "State active duty" does appear to entail a call to state service by the Governor to respond to an emergency or to assist with certain formal state government activities. Noticeably absent from this section and the entirety of chapter 127A is any mention of a call to "State active duty" for the purposes of training. We believe this absence, combined with the 1999 amendment's redaction of the "camp" and "drill" language contained in the prior version of the statute, provides support for defendant's argument that "State active duty" does not include training ordered pursuant to 32 U.S.C. § 502(f).

However, chapter 127A does present some ambiguity as to whether "State active duty" possesses a specific meaning in and of itself or if it is simply synonymous with state service in a general sense. For example, N.C. Gen. Stat. § 127A-98 (2007) describes the calling up of the State militia "to execute the law, secure the safety of

persons and property, suppress riots or insurrections, repel invasions or provide disaster relief" as a call to "active State service[,]" thus supporting the argument that "State ` active duty" is synonymous with state, as opposed to federal, service in a general sense. However, the different awards established for North Carolina National Guard members and units in chapter 127A support the argument that "State active duty" is a particular form of the broader category of State service.[8] Regardless of this ambiguity, however, chapter 127A, article 8, which is entitled "Pay of Militia," clearly indicates that when a North Carolina National Guard member is called or ordered into state service, he or she is: (1) under the authority of the Governor; (2) performing service to the State of North Carolina; and (3) paid by the State with state funds. *See, e.g.*, N.C. Gen. Stat. §§ 127A-105-108 (2007).

### B. Dual State-Federal Structure of the National Guard

Because of the unique, dual state-federal structure of the National Guard, we next examine this relationship in an effort to obtain greater clarity as to the distinction between state and federal service.

The National Guard is the only reserve component of the United States' military to also have a non-federal mission. Serving as the state militia, the National Guard's unique dual military role has been explained as follows:

Perhaps the most unique aspect of the National Guard is that it exists as both a federal and state force. As a federal force, the Guard provides ready, trained units as an integral part of America's field forces. In its state role, the National Guard protects life and property and preserves peace, order, and public safety under the direction of state and federal authorities. No other reserve military force in the world has such an arrangement, and the National Guard's dual allegiance to state and nation has often been the subject of much contro-

8. N.C. Gen. Stat. §§ 127A-45, -45.1 (2007) respectively establish the "North Carolina National Guard State Active Duty Award" for "members of the North Carolina National Guard who, by order of the Governor, satisfactorily serve a tour of State active duty" and the "North Carolina National Guard Governor's Unit Citation" for "any unit of [the] North Carolina national guard distinguishing itself by extraordinary heroism or meritorious service while in a State active duty status." In contrast, N.C. Gen. Stat. §§ 127A-45.2, -45.2A (2007) establish awards for North Carolina national guard units who distinguish themselves "through heroism or meritorious service to the State of North Carolina."

> versy and misunderstanding . . . . National Guard troops serve at the direction of the state governors until the president [sic] of the United States orders them to active duty for either domestic emergencies or overseas service.

Robert L. Martin, *Military Justice in the National Guard: A Survey of the Laws and Procedures of the States, Territories, and the District of Columbia*, 2007 Army Law. 30, 32 (2007) [hereinafter, Martin, *Military Justice*] (footnote omitted; alteration in original). Since 1933, all persons who have enlisted in their State national guard, i.e., "the National Guard of the various States" have also been required to enlist in the federal component of the Guard, i.e., "the National Guard of the United States." *Perpich v. Department of Defense*, 496 U.S. 334, 345, 110 L. Ed. 2d 312, 325 (1990). "In the latter capacity they [are] part of the Enlisted Reserve Corps of the Army, but unless and until ordered to active duty in the Army, they retain[] their status as members of a separate State Guard unit." *Id.* at 345, 110 L. Ed. 2d at 325. "[A] member of the Guard who is ordered to active duty in the federal service is thereby relieved of his or her status in the State Guard for the entire period of federal service." *Id.* at 346, 110 L. Ed. 2d at 325. However, when " ' "relieved from active duty in the military service of the United States all individuals and units . . . revert to their [state] National Guard status." ' " *Id.* (citations omitted). In sum, as stated by the United States Supreme Court, "all [National Guard members] . . . must keep three hats in their closets— a civilian hat, a state militia hat, and an army hat—only one of which is worn at any particular time." *Id.* at 348, 110 L. Ed. 2d at 327. In other words, except for those instances where individual members of a state National Guard are on federal active duty, members retain their state affiliation, status, and duties. *See id.* at 345-46, 348, 110 L. Ed. 2d at 325-27. As such, in the instant case, unless plaintiff's order to active duty for training pursuant to 32 U.S.C. § 502(f) qualifies as federal active duty, she was functioning in a state capacity and subject to the command and control of the governor.

### C.  Statuses of National Guard Members
### (Title 10 and Title 32)

As discussed *infra*, title 10 and title 32 of the United States Code indicate that plaintiff's status in the case *sub judice* was not federal active duty and consequently, that she was functioning in a state capacity when she sustained her injuries. Federal "active duty" is defined as "full-time duty in the active military service of the United States" but "does not include full-time National Guard duty." 10 U.S.C.

§ 101(d)(1) (2000); 32 U.S.C. § 101(12) (2000) (same). "Full-time National Guard duty" is defined as

> training or other duty, other than inactive duty, performed by a member of the Army National Guard of the United States . . . in the member's status as a member of the National Guard of a State or territory . . . under section 316, 502, 503, 504, or 505 of title 32 for which the member is entitled to pay from the United States or for which the member has waived pay from the United States.

10 U.S.C. § 101(d)(5) (2000); 32 U.S.C. § 101(19) (2000) (same). In other words, a National Guard member is only on federal "active duty" as a member of the United States Army when called to federal service pursuant to Title 10. *See Perpich*, 496 U.S. at 346, 350 n.21, 110 L. Ed. 2d at 325, 328, n.21; *see also* Martin, *Military Justice*, 2007 Army Law. at 31 (footnote omitted) ("[w]hile the National Guard is a component of the U.S. Armed Forces, it is also the militia of the individual state when not serving in a federal status. More simply put, unless called into federal service under Title 10, the National Guard remains primarily under the control of the states and their governors").

In contrast to a call to federal service pursuant to Title 10, when participating in training under the authority of Title 32, a National Guard member is generally acting in his or her state capacity.

> Federally funded [Army National Guard] training duty, referred to as "Title 32 duty," is ordered by the state governor and paid for with federal funds. This form of duty is used for weekend drills, annual training, and most schools and assignments within the United States. Most National Guard duty falls into this category. Conversely, "Title 10 duty" is duty ordered by the President or the Secretary of the [Army] under the authority of federal law and paid for with federal funds. This form of duty is used for basic (initial) military training, overseas training missions, and occasions when the Guard is called or ordered to active duty (mobilized) by the U.S. Government.

Grant Blowers and David P.S. Charitat, *Disciplining The Force—Jurisdictional Issues In The Joint And Total Force*, 42 A.F. L. Rev. 1, 8 (1997). "In 1956, Congress revised, codified, and enacted into law, Title 32 of the U.S. Code, entitled 'National Guard.' . . . Title 32 generally serves as a compilation of most federal statutes affecting the National Guard while serving under state control, yet funded through

[Department of Defense] appropriations." Christopher R. Brown, *Been There, Doing That in a Title 32 Status: The National Guard Now Authorized to Perform its 400-Year Old Domestic Mission in Title 32 Status*, 2008 Army Law. 23, 29 [hereinafter, Brown, *Title 32 Status*]. Title 32 training includes: "Inactive Duty for Training (IDT, that is, weekend drills) and annual training (AT)[, which] are performed under the authority of 32 U.S.C. § 502(a) . . . *[as well as t]raining . . . performed under [32 U.S.C.] § 502(f)*." Rich, *The National Guard*, 1994 Army Law. at 40, n.51 (emphasis added).

In sum, as the federal scheme indicates, when plaintiff was training under the authority of 32 U.S.C. § 502(f), she was: (1) wearing her state militia hat; (2) under the command and control of the Governor; and (3) not on federal "active duty." Nevertheless, this does not compel the conclusion that our legislature intended "State active duty" to include training pursuant to Title 32, and we reiterate that such an interpretation requires us to read words into section 97-2(2) which simply are not there.

### D. "State Active Duty" in the Federal Context

32 C.F.R. § 536.97 (2008), which governs the "Scope for claims under [the] National Guard Claims Act [32 U.S.C. § 715]" provides:[9]

> (a) Soldiers of the Army National Guard (ARNG) can perform military duty in an active duty status under the authority of Title 10 of the United States Code, in a full-time National Guard duty or inactive-duty training status under the authority of Title 32 of the United States Code, *or in a state active duty status under the authority of a state code.*

> (1) When ARNG soldiers perform active duty, they are under federal command and control and are paid from federal funds. For claims purposes, th[e]se soldiers are treated as active duty soldiers. . . .

> (2) When ARNG soldiers perform full-time National Guard duty or inactive-duty training, they are under state command and control and are paid from federal funds. . . .

---

9. "The National Guard Claims Act authorizes the settlement of claims for damages caused by National Guard Soldiers in certain limited circumstances. The Act only applies when National Guard personnel are under state control, [and are] being paid with federal funds, such as when they are performing full-time National Guard duties or are on inactive duty training." R. Peter Masterton, *"Managing a Claims Office,"* 2005 Army Law. 46, 61 (footnotes omitted).

> (3) *When ARNG soldiers perform state active duty, they are under state command and control and are paid from state funds. . . .*

(Emphasis added.)[10] While the situations this regulation addresses are not exactly on point, the explicit distinction it makes between federal active duty (Title 10 duty), Title 32 duty, and state active duty and its "definition" of state active duty, i.e., a call to state service performed under the authority of state law and under the command and control of the Governor which is paid by the State with state funds, are consistent with the general definition of "state active duty" as articulated in numerous military law review articles.

> National Guard forces perform their historical, militia-based domestic operational missions when their governors mobilize them in state controlled and funded SAD [state active duty] status. State laws dictate when state authorities may call upon their National Guard to perform SAD, generally providing broad authority for the use of militias to quell domestic disturbances or assist in disaster relief when local and state government civil resources have been exhausted. The states typically pay their National Guard personnel serving in a SAD status at the same rate of pay that the Soldiers . . . receive while serving in a federal status. During a SAD response, the states may use federal equipment provided to the states' National Guard units for training purposes; however, the states must reimburse the Federal Government for the use of certain resources, such as fuel.

Brown, *Title 32 Status*, 2008 Army Law. at 29 (footnotes omitted). "[S]tate active duty . . . is performed under [the] authority of state law and paid for with state funds[.]" Rich, *The National Guard*, 1994 Army Law. at 40 (footnote omitted). "State active duty (SAD) is specifically defined by state law. In general, it refers to the National Guard under the control of the governor, performing a state mission, paid for by state funds." Kevin Cieply, *Charting A New Role For Title 10 Reserve Forces: A Total Force Response To Natural Disasters*, 196 Mil. L. Rev. 1, 4, n.10 (2008). In sum, these articles further support the argument that at least in the federal context, "State active duty" is generally defined as: A call to state service pursuant to state law

---

10. This section did not contain the "state active duty" language at the time our legislature amended section 97-2(2) as it was not adopted until 2006 and not in effect until 2007. *See* 71 Fed. Reg. 69,360, 69,390 (Nov. 30, 2006) (codified at 32 C.F.R. § 536.97).

where National Guard members serve under the command and control of the Governor and are paid by the State with state funds.

### E.  N.C. Gen. Stat. § 97-2(2) and "State Active Duty"

While the above general definition is not controlling as to what our legislature intended "State active duty" to mean within the context of section 97-2(2), this definition does square with the concept of "state service" set out in chapter 127A of the North Carolina General Statutes and discussed *supra*, i.e., those instances when National Guard members are called to perform state service by the Governor under the authority of state law and are paid by the State with state funds. Furthermore, we believe the explicit differentiation between federal "active duty"; Title 32 duty, (including, *inter alia,* full-time national guard duty); and "state active duty" contained in the federal scheme provides insight as to why our legislature deemed it necessary to amend section 97-2(2) to clarify when National Guard members are state employees for purposes of the Workers' Compensation Act, particularly given this Court's decisions in *Britt* and *Duncan,* which respectively awarded benefits to a Guard member injured while training pursuant to Title 10 and to a Guard member injured presumably while training pursuant to Title 32. Therefore, we conclude that pursuant to N.C. Gen. Stat. § 97-2(2), "State active duty" includes those instances where a North Carolina National Guard member is: Called into service of the State of North Carolina; operating under the command and control of the Governor pursuant to state law; and paid by the State with state funds.[11] Consequently, we further conclude it does not encompass Title 32 training.

Our conclusion is consistent with the vast majority of other states that have considered the compensability of a National Guard member's injuries incurred while training pursuant to Title 32. *See, e.g., Sullivan v. Industrial Claim Appeals Office,* 22 P.3d 535, 539 (Colo. Ct. App. 2000) (holding that injuries sustained during weekend training activities undertaken pursuant to 32 U.S.C. § 502 are not com-

---

11. We note that our conclusion is also supported by the sample "State active duty" order which is present in the record but which the Deputy Commissioner and the Commission did not consider because this evidence was excluded on various grounds. This order: (1) specifically states that the National Guard Member is "ordered to State Active Duty (SAD)" in response to Hurricane Isabel; (2) lists its authorization as "[c]onfirm[ing] verbal orders of the Adjutant General"; (3) states that the call to duty is "By Order of the Governor"; (4) states that "State pay and allowances" are authorized and that "[p]ersons in a federal pay status . . . must be in an official leave status when placed on State Duty Orders"; and (5) provides that "[p]ersonnel listed on this order are authorized [to receive] the NCNG State Active Duty Award."

pensable because to be on "active service" and thus to qualify for workers' compensation benefits, national guard members "must be ordered by the governor to provide full-time service . . . in response to an emergency confronting the state"); *Kentucky Nat'l Guard v. Bayles*, 535 S.W.2d 234, 237-38 (Ky. 1976) (holding that national guard members who are injured while training pursuant to 32 U.S.C. § 502 are not entitled to state workers' compensation benefits because in that status they are entitled to receive federal pay); *Lucas v. Military Dep't*, 498 So. 2d 161, 166 (La. Ct. App. 1986) (holding that national guard members who sustain injuries during annual training pursuant to 32 U.S.C. § 502 are not entitled to state workers' compensation benefits because they already receive federal payment and benefits); *Cochran v. Missouri Nat'l Guard*, 893 S.W.2d 814, 816-17 (Mo. 1995) (holding that injuries sustained by national guard members while on active duty training pursuant to 32 U.S.C. § 502 are not compensable under the state workers' compensation system because in this status members are not "ordered to active state duty by the governor"); *Banker v. Oklahoma Army Nat'l Guard*, 7 P.3d 509, 510 (Okla. Civ. App. 2000) (holding that national guard members injured while participating in a summer training camp pursuant to 32 U.S.C. § 503 are not entitled to state workers' compensation benefits because they are not on "state duty"). In addition, we note that because plaintiff was performing full-time national guard duty she was entitled to receive and did receive some federal benefits for her injuries in accordance with federal law. *See, e.g.,* 10 U.S.C. § 1074(a) (2000) (medical and dental care); 37 U.S.C. §§ 204(g), (h) (2000) (incapacitation pay); 38 U.S.C. § 1131 (2000) (veteran disability pay). In contrast, National Guard members "performing state active duty are not covered by federal medical or disability benefits. [When] performing state missions[, they] are only protected under state worker's compensation laws." Martin, *Military Justice*, 2007 Army Law. at 34 (footnote omitted).

In the instant case, it is undisputed that plaintiff was injured while training pursuant to Title 32 and that she was paid with federal and not state funds. As a result, plaintiff was not on "State active duty" pursuant to section 97-2(2) when she sustained her injuries. Because plaintiff was not an employee as defined by N.C. Gen. Stat. § 97-2(2), the Commission lacked subject matter jurisdiction.

### III. Conclusion

In sum, for the reasons stated herein, we conclude that plaintiff was not an employee within the meaning of N.C. Gen. Stat. § 97-2(2) when she sustained her injuries. As such, the Commission did not

have subject matter jurisdiction. Accordingly, we vacate the Commission's opinion and award.

Vacated.

Judges ELMORE and GEER concur.