CURRY SHAW, Employee v. U.S. AIRWAYS, INC., Employer, AMERICAN PROTECTION INSURANCE COMPANY, Carrier

No. 580A07

(Filed 27 August 2008)

**Workers' Compensation— average weekly wage—fringe benefits**

An employer's contributions to an employee's retirement accounts are not included in the calculation of "average weekly wage" under the Workers' Compensation Act. Under the meaning of the Act, the inquiry is whether the employers' contributions constitute earnings: nothing in the Act specifically includes fringe benefits, and the legislature has not addressed fringe benefits in subsequent revisions since the terms "earnings" was first used in 1929. Weighing the public policy considerations of including fringe benefits as earnings for workers' compensation is the province of the General Assembly.

Justice HUDSON dissenting.

Justice TIMMONS-GOODSON joins in this dissenting opinion.

———————————————

**SHAW v. U.S. AIRWAYS, INC.**

[362 N.C. 457 (2008)]

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 186 N.C. App. 474, 652 S.E.2d 22 (2007), reversing and remanding an opinion and award filed on 13 September 2006 by the North Carolina Industrial Commission. Heard in the Supreme Court 19 March 2008.

*The Sumwalt Law Firm, by Vernon Sumwalt, for plaintiff-appellee.*

*Littler Mendelson, P.C., by Kimberly A. Zabroski and Brian S. Clarke, for defendant-appellants.*

NEWBY, Justice.

This case presents the issue of whether an employer's contributions to an employee's retirement accounts are included in the calculation of "average weekly wage" under our Workers' Compensation Act. While the Act is to be "liberally construed," such liberality is not to be extended "beyond [its] clearly expressed language." *See Deese v. Se. Lawn & Tree Expert Co.*, 306 N.C. 275, 277, 293 S.E.2d 140, 142-43 (1982). Because we do not believe inclusion of fringe benefits to be "clearly expressed," we reverse the Court of Appeals.

Plaintiff Curry Shaw worked as a fleet service worker for defendant-employer U.S. Airways. As an employee, plaintiff participated in two separate retirement programs. The first program was a 401(k) plan (the "Savings Plan") that allowed plaintiff to defer a certain percentage of his eligible income into a retirement savings account. Under the plan, defendant-employer would match fifty percent of plaintiff's contributions up to two percent of plaintiff's eligible compensation. The second retirement program (the "Pension Plan") was funded entirely by obligatory contributions made by defendant-employer on behalf of plaintiff, based on his income and age. The plans were maintained in separate accounts by plan administrator Fidelity Investment Services, which offered plaintiff investment options for the money contributed by plaintiff and defendant-employer. These investment options were the same for both plans and included a mix of pre-selected stocks, mutual funds, and bonds.

On 12 July 2000, plaintiff injured his back while attempting to lift luggage from a baggage belt at his workplace. In a Form 60 filed on 24 August 2000, defendant-employer and its workers' compensation carrier (collectively "defendants") admitted plaintiff's right to compensation under the North Carolina Workers' Compensation Act for

an injury by accident. Defendants reported plaintiff's "average weekly wage" as $825.55. This amount omitted defendant-employer's contributions in the 52 weeks preceding plaintiff's injury of $1,798.33 to plaintiff's Pension Plan and $899.17 to plaintiff's Savings Plan. Inclusion of these amounts in the average weekly wage calculation would have increased plaintiff's average weekly wage by $51.87 (the sum of defendant-employer's contributions to both plans divided by 52).

On 23 November 2004, plaintiff filed a Form 33 requesting a hearing because the parties were unable to agree whether defendant-employer's contributions to the Savings and Pension Plans were part of plaintiff's average weekly wage. Following a hearing on 25 May 2005, a Deputy Commissioner entered an opinion and award concluding that the contributions were not included. Plaintiff appealed to the Full Commission, which entered an opinion and award on 13 September 2006 affirming and modifying the Deputy Commissioner's decision. The Commission concluded the contributions "did not constitute earnings, but rather were a fringe benefit of [plaintiff's] employment with defendant-employer that should not be included in the calculation of his average weekly wage."

On appeal, the Court of Appeals majority reversed and remanded the case to the Commission after "conclud[ing] that not all fringe benefits are required to be excluded from an average weekly wage calculation and [that] the Commission did not apply the proper analysis in determining whether the contributions at issue in this case should be excluded." *Shaw v. U.S. Airways, Inc.*, 186 N.C. App. 474, 476-77, 652 S.E.2d 22, 23 (2007). The dissenting judge would have affirmed the Commission, disagreeing with the majority's interpretation of existing law and cautioning that "[a]ny more detailed mandates on what may and may not be included in these computations must come from our legislature, not from this Court." *Id.* at 489, 652 S.E.2d at 32 (Hunter, J., dissenting).

The sole question before us is whether defendant-employer's contributions to plaintiff's two retirement accounts should be included in plaintiff's "average weekly wage" as defined by N.C.G.S. § 97-2(5). We have observed that section 97-2(5) "sets forth in priority sequence five methods by which an injured employee's average weekly wages are to be computed." *McAninch v. Buncombe Cty. Sch.*, 347 N.C. 126, 129, 489 S.E.2d 375, 377 (1997). Plaintiff argues that defendant-employer's contributions to his retirement accounts should be included under the first method of calculating average

**SHAW v. U.S. AIRWAYS, INC.**

[362 N.C. 457 (2008)]

weekly wage, which in pertinent part provides: " 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . divided by 52 . . . ." N.C.G.S. § 97-2(5) (2007).

Thus, the inquiry becomes whether defendant-employer's contributions constitute "earnings." Plaintiff contends that the contributions are earnings because they represent economic gain to him and valuable consideration for his employment. Defendants argue that the contributions are not earnings because nothing in the plain language of section 97-2(5) specifically includes fringe benefits. We agree with defendants.

When interpreting a statute, we ascertain the intent of the legislature, first by applying the statute's language and, if necessary, considering its legislative history and the circumstances of its enactment. *See Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990) (citing *State ex rel. N.C. Milk Comm'n v. Nat'l Food Stores, Inc.*, 270 N.C. 323, 332, 154 S.E.2d 548, 555 (1967)). Our Workers' Compensation Act does not define "earnings." Thus, we review the historical context of the Act's adoption in 1929. At that time, fringe benefits were rare. *See Morrison-Knudsen Constr. Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 461 U.S. 624, 632, 103 S. Ct. 2045, 2050, 76 L. Ed. 2d 194, 201 (1983) (noting that in 1927, when the federal workers' compensation statute at issue in that case was enacted, "employer-funded fringe benefits were virtually unknown"). Since its enactment, the original language used by the legislature in setting out the first method of calculating average weekly wages under section 97-2 has remained substantially unchanged. *See* The North Carolina Workmen's Compensation Act, ch. 120, sec. 2(e), 1929 N.C. Sess. Laws 117, 118. Moreover, the only substantive addition to this language was a 1947 amendment to include in average weekly wages subsistence allowances paid to war veteran trainees by the United States government. *See* Act of Apr. 2, 1947, ch. 627, sec. 1(1), 1947 N.C. Sess. Laws 929, 929. At no point has the General Assembly mentioned fringe benefits in their revisions of other parts of section 97-2. Given that fringe benefits were uncommon when the legislature used the term "earnings" in 1929 and the legislature's subsequent failure to address fringe benefits in the face of their proliferation, we conclude the General Assembly did not intend to include fringe benefits in the concept of earnings. Thus, we reach a different outcome from the Court of Appeals majority

because its analysis in the case below focused on whether the Act clearly *excludes* fringe benefits, rather than answering the controlling question: whether the Act specifically *includes* them.

Our statutory construction in this case is similar to that of the United States Supreme Court in *Morrison-Knudsen*, its leading case on the issue of fringe benefits in the federal workers' compensation system. In *Morrison-Knudsen*, the Court emphasized Congress's failure to include fringe benefits in numerous revisions of the Longshoremen's and Harbor Workers' Compensation Act, which was enacted in 1927, 461 U.S. at 632-37, 103 S. Ct. at 2050-53, 76 L. Ed. 2d at 201-04, and ultimately concluded that the employer's contributions to the employee's health and welfare pensions were not part of the employee's wages when calculating benefits under the Act, *id.* at 637, 103 S. Ct. at 2052-53, 76 L. Ed. 2d at 204. Relying on *Morrison-Knudsen*, the only North Carolina opinion to have addressed fringe benefits in workers' compensation cases held that it was not unfair under the fourth method of section 97-2(5) to exclude employer-paid health insurance premiums. *Kirk v. N.C. Dep't of Corr.*, 121 N.C. App. 129, 135-36, 465 S.E.2d 301, 305-06 (1995), *disc. rev. improvidently allowed*, 344 N.C. 624, 476 S.E.2d 105 (1996). While neither *Morrison-Knudsen* nor *Kirk* controls the outcome in this case, it is also true that neither gives us a compelling reason judicially to include fringe benefits as part of "earnings" under the statute.

A leading treatise on workers' compensation law provides additional guidance: "In computing actual earnings as the beginning point of wage-basis calculations, there should be included not only wages and salary but any thing of value received as consideration for the work, as, for example, tips, bonuses, commissions and room and board, constituting real economic gain to the employee." 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 93.01[2][a], at 93-19 (Nov. 2005) (footnotes omitted). While fringe benefits could be considered broadly as "[a] thing of value received as consideration for the work" or as "constituting real economic gain to the employee," the Larson text treats fringe benefits separately from its enumerated examples of earnings and cautions against including fringe benefits in calculations of the average weekly wage:

> Workers' compensation has been in force in the United States for over eighty years, and fringe benefits have been a common feature of American industrial life for most of that period. Millions of compensation benefits have been paid during this time.

Whether paid voluntarily or in contested and adjudicated cases, they have always begun with a wage basis calculation that made "wage" mean the "wages" that the worker lives on and not miscellaneous "values" that may or may not someday have a value to him or her depending on a number of uncontrollable contingencies. Before a single court takes it on itself to say, "We now tell you that, although you didn't know it, you have all been wrongly calculating wage basis in these millions of cases, and so now, after eighty years, we are pleased to announce that we have discovered the true meaning of 'wage' that somehow eluded the rest of you for eight decades," that court would do well to undertake a much more penetrating analysis than is visible in the Circuit Court's opinion [which was reversed by the Supreme Court in *Morrison-Knudsen*] of why this revelation was denied to everyone else for so long.

*Id.* § 93.01[2][b], at 93-21 to -22.

Further support for our analysis is found in a basic understanding of "taxable income" under the Internal Revenue Code. Defendant-employer reported plaintiff's average weekly wage as $825.55, which includes plaintiff's contributions to the Savings Plan while excluding defendant-employer's matching contributions. This is consistent with the tax implications of each contribution. Plaintiff's contributions were simply the portion of his gross wages that he chose to place in the Savings Plan. While plaintiff's contributions were not subject to federal income tax at the time they were "earned" by plaintiff, they remained subject to federal Medicare and Social Security taxes. Internal Revenue Serv., U.S. Dep't of the Treasury, Publ'n No. 525, *Taxable and Nontaxable Income* 8 (2007). However, defendant-employer's contributions are subject to neither federal income tax nor Medicare and Social Security taxes. *See id.* Thus, the gross amount of plaintiff's earnings, including his retirement contributions, are treated as taxable income to some extent, whereas defendant-employer's contributions are not.

Noting the foregoing persuasive authorities, we acknowledge that fringe benefits are prevalent today, thus making their inclusion in the computation of benefits under the Workers' Compensation Act a significant issue. As we have stated before:

This Court has interpreted the statutory provisions of North Carolina's workers' compensation law on many occasions. In every instance, we have been wisely guided by several sound

rules of statutory construction which bear repeating at the outset here. First, the Workers' Compensation Act should be liberally construed, whenever appropriate, so that benefits will not be denied upon mere technicalities or strained and narrow interpretations of its provisions. Second, such liberality should not, however, extend beyond the clearly expressed language of those provisions, and our courts may not enlarge the ordinary meaning of the terms used by the legislature or engage in any method of "judicial legislation." Third, it is not reasonable to assume that the legislature would leave an important matter regarding the administration of the Act open to inference or speculation; consequently, the judiciary should avoid "ingrafting upon a law something that has been omitted, which [it] believes ought to have been embraced."

*Deese*, 306 N.C. at 277-78, 293 S.E.2d at 142-43 (alteration in original) (citations omitted). Without further guidance from our legislature, we will not issue an opinion requiring the Industrial Commission to consider whether "earnings" includes fringe benefits. We do not know what practical effect such a holding would have on employee benefits. On the one hand, a more modern and fair notion of "earnings" might logically include the cash value of fringe benefits, which are strong incentives for many employees in choosing one employer over another. However, inclusion of fringe benefits as part of "earnings" in calculating workers' compensation benefits might deter employers from offering those benefits in the first place. Weighing these and other public policy considerations is the province of our General Assembly, not this Court.

Based on the plain language of section 97-2(5), we hold that employer contributions to an employee's retirement accounts are not included in the calculation of the employee's average weekly wage. Accordingly, we reverse the Court of Appeals.

REVERSED.

Justice HUDSON dissenting.

Plaintiff Shaw argued, and the Court of Appeals agreed, that in his narrow circumstances, when the employer's contributions to his pension and 401(k) plan are fully paid, vested, and quantifiable, they should have been included in the calculation of his average weekly wages under N.C.G.S. § 97-2(5). Since I believe that existing legal

authority from this Court supports the Court of Appeals majority and the plaintiff's position, I respectfully dissent.

Most fundamentally, prior language from this Court directly contradicts the majority's holding today. The issue here is whether the amounts contributed by the employer to plaintiff's pension and 401(k) plan should have been considered as earnings for purposes of determining the average weekly wage under this section. The Commission found as fact, and the parties do not dispute, that the total of the employer contributions in the year at issue is $1,798.33 (to pension) plus $899.17, which, if divided by 52, would increase plaintiff's average weekly wage by $51.87. The pivotal point is simply whether the employer's contributions to the pension plan constitute "earnings" within the context of N.C.G.S. § 97-2(5). In the government context, we have already held that: " ' "A pension paid . . . is a deferred portion of the compensation earned for services rendered." ' If a pension is but deferred compensation, already in effect earned, merely transubstantiated over time into a retirement allowance, then an employee has contractual rights to it. . . . Fundamental fairness also dictates this result." *Bailey v. State*, 348 N.C. 130, 141, 500 S.E.2d 54, 60 (1998) (quoting *Simpson v. N.C. Local Gov't Employees' Ret. Sys.*, 88 N.C. App. 218, 223-24, 363 S.E.2d 90, 94 (1987) (quoting *Great Am. Ins. Co. v. Johnson*, 257 N.C. 367, 370, 126 S.E.2d 92, 94 (1962)), *aff'd per curiam*, 323 N.C. 362, 372 S.E.2d 559 (1988)). With language so precisely on point, our inquiry should stop there. Having already held that retirement accounts for state employees are sufficiently sacrosanct to invoke the Contracts Clause of the state and federal constitutions, and even to pierce sovereign immunity, I cannot agree with a holding that consigns similar rights for an injured worker to some ephemeral realm not encompassed in the universe of "earnings."

Beyond *Bailey*, few rules are better established than that the Workers' Compensation Act must be liberally construed, to the end that benefits for injured workers not be limited or denied based on narrow or strained technical interpretations of the Act. *E.g. Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998); *Hollman v. City of Raleigh*, 273 N.C. 240, 252, 159 S.E.2d 874, 882 (1968); *Johnson v. Asheville Hosiery Co.*, 199 N.C. 38, 40, 153 S.E. 591, 593 (1930). The section of the Act at issue here reads in pertinent part: " 'Average Weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . ." N.C.G.S. § 97-2(5) (2007). Defendants contend

**SHAW v. U.S. AIRWAYS, INC.**

[362 N.C. 457 (2008)]

that these amounts, while earned by plaintiff, are not "earnings" within the meaning of the statute because these types of payments are not specifically mentioned in the Act. For several reasons in addition to *Bailey,* I conclude that this interpretation is not consistent with the well-established requirement of liberal construction, but represents the opposite. The plain language of N.C.G.S. § 97-2(5) appears to contemplate that amounts beyond basic wages should be included in the statutory term "average weekly wages," by the use of the word "earnings." The General Assembly clearly knew how to use the word "wages" if that is what it intended; in this section, it used the broader term "earnings."

Defendants and the dissent in the Court of Appeals argue that because the kinds of benefits at issue here did not exist when the Act was first written in 1929 and the statute was not amended over the years specifically to include them, they must be excluded. I disagree, since I conclude that the language of the section is broad enough to include them, and other language in the Act supports that this was the legislature's intent. For example, although this language is not at issue here, this section provides elsewhere that "[w]herever allowances *of any character* made to an employee in lieu of wages are specified part of the wage contract, they shall be deemed a part of his earnings." *Id.* (emphasis added). This part of the section indicates clearly that the legislature intended that additional payments of any kind should be included in the computation of average weekly wage.

Defendants and the dissent refer to the amounts at issue here as "fringe benefits," not intended for inclusion. I conclude otherwise, in that such benefits are no longer considered "fringe" (if they ever were), but are actually a critical part of the package of recompense, and a central part of the employment contract. It is undisputed that plaintiff left a higher-paying job to join defendant precisely *because* of the employer contribution at stake here. Common sense dictates that being the impetus for switching jobs, the contributions represented something of value—the linchpin of determining whether a particular benefit should be included as the basis of wage-benefit calculations. *See* 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 93.01[2][a] (Nov. 2005). It is not realistic, in my view, to require the legislature to amend this section of the Act whenever a new form of benefit comes into existence, in light of the broad language of the existing statute.

Moreover, I do not believe that the cases relied upon by defendants, especially *Morrison-Knudsen* and *Kirk*, compel the conclusion argued. *Morrison-Knudsen Constr. Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 461 U.S. 624, 76 L. Ed. 2d 194 (1983); *Kirk v. N.C. Dep't of Corr.*, 121 N.C. App. 129, 465 S.E.2d 301 (1995), *disc. rev. improvidently allowed*, 344 N.C. 624, 476 S.E.2d 105 (1996).

In *Morrison-Knudsen*, a case brought under the federal Longshoremen's and Harbor Workers' Compensation Act, the issue concerned whether employer contributions to the union trust fund should be considered as "wages." 461 U.S. at 626, 76 L. Ed. 2d at 197. In that case, not brought under our statute, the benefits in question were not quantifiable and it was unclear from the record whether they were vested as they are here. *Id.* at 627-28, 76 L. Ed. 2d at 198. Thus, the analysis is inapposite. Further, in *Kirk*, the Court was asked to include health insurance premiums in average weekly wages. 121 N.C. App. at 134, 465 S.E.2d at 305. Again, these benefits were not vested, quantifiable, or paid to the plaintiff in cash equivalent. *Id.* at 136, 465 S.E.2d at 306.

Here, the contributions to plaintiff were vested, quantifiable (and quantified above), and available to plaintiff, in that he could have withdrawn them at any time, albeit at risk of penalty and tax consequences. The majority's assertion that "defendant-employer's contributions are subject to neither federal income tax nor Medicare and Social Security taxes" is simply incorrect; they are taxed as income at the time they are withdrawn, with penalties if withdrawn early.

The majority also relies on selected excerpts from a federal income tax guide. The publication provides persuasive, not binding, authority in yet another context—federal income tax. However, a study of the Internal Revenue Code itself shows that the payments at issue here *are* treated as regular income upon withdrawal— a position that runs directly contrary to the majority's holding today. *See, e.g.*, I.R.C. § 402(h)(3) (2000) (providing that contributions to retirement accounts are subject to tax upon withdrawal: "Any amount paid or distributed out of an individual retirement plan pursuant to a simplified employee pension shall be included in gross income by the payee or distributee, as the case may be . . . ."). Therefore, the majority's reliance on an Internal Revenue Service guide is misplaced at best.

SHAW v. U.S. AIRWAYS, INC.

[362 N.C. 457 (2008)]

Plaintiff has argued persuasively that in his limited circumstances, when the employer's contributions are fully vested, quantifiable, and available to him personally as cash equivalent, such benefits should be included in the calculation of his average weekly wage pursuant to N.C.G.S. § 97-2(5). I conclude that the long-standing tradition and mandate of liberal construction of the Workers' Compensation Act require that we include, rather than exclude, these amounts from plaintiff's average weekly wage. While it is not for us to expand the benefits the legislature has prescribed under the Workers' Compensation Act, it is equally inappropriate for us to shrink them in the absence of a statutory mandate to do so. For these reasons, I would affirm the Court of Appeals.

Justice TIMMONS-GOODSON joins in this dissenting opinion.