IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-140

Filed: 6 October 2015

North Carolina Industrial Commission, I.C. Nos. 459234, 271904

DOROTHY JANE KETCHIE and CLEGG LEE JOINES, Employees, Plaintiffs,

v.

FIELDCREST CANNON, INC., Insolvent Self-Insured Employer, N.C. SELF-INSURANCE SECURITY ASSOCIATION, Defendants.

Appeal by Plaintiffs-Appellants from order entered 29 October 2014 by the Full Commission of the North Carolina Industrial Commission. Heard in the Court of Appeals 13 August 2015.

> *Wallace and Graham, P.A., by Michael B. Pross, Edward L. Pauley, and Cathy A. Williams, for Plaintiffs-Appellants.*

> *Stuart Law Firm, PLLC, by Catherine R. Stuart and Susan J. Vanderweert, for Defendants-Appellees.*

INMAN, Judge.

Plaintiffs-Appellants are appealing the Full Commission's order denying their claims on the grounds that their claims are not "covered claims," as that term is defined in N.C. Gen. Stat. § 97-130(4), because their last injurious exposure to asbestos occurred before Fieldcrest was a member of the North Carolina Self-Insurance Security Association ("the Security Association"). After careful review, we affirm.

When workers who suffer from occupational disease incurred their last injurious exposure to asbestos prior to a self-insurer joining the Security Association, this Court cannot interpret the statute in a manner contrary to its plain and unambiguous language, even if this interpretation bars recovery by workers who have no other recourse due to the employer's bankruptcy.

## Factual and Procedural Background

Plaintiff-Appellant Clegg Lee Joines ("Mr. Joines") was employed for various periods of time by Defendant-Appellee Fieldcrest Cannon, Inc. ("Fieldcrest") beginning in 1941 and ending 24 September 1986. It is undisputed that Mr. Joines was exposed to asbestos during his employment with Fieldcrest. The parties stipulated that Mr. Joines's last injurious exposure to asbestos occurred during the seven months prior to 24 September 1986. Mr. Joines was diagnosed with mesothelioma in 2003 and died on 9 May 2004.

Plaintiff-Appellant Dorothy Jane Ketchie ("Ms. Ketchie") was employed by Fieldcrest from 1972 to 1974. Her last date of employment was 31 January 1974. The parties stipulated that her last injurious exposure to asbestos occurred within the seven months prior to 31 January 1974. In 2000, Ms. Ketchie was diagnosed with asbestosis as a result of her exposure to asbestos during her employment with Fieldcrest.

The General Assembly created the Security Association on 1 October 1986 after several large, self-insured trucking companies became insolvent which resulted in many injured employees' outstanding claims not being paid. The Security Association's enabling statute states that the purpose of the Security Association is, among other things, "to provide mechanisms for the payment of covered claims against member self-insurers, to avoid excessive delay in payment of covered claims, [and] to avoid financial loss to claimants because of the insolvency of a member self-insurer[.]" N.C. Gen. Stat. § 97-131(a) (2013). This same language was used in the original 1986 version of section 97-131(a).

Fieldcrest (which later became a subsidiary of Pillowtex Inc. and Pillowtex Corporation) was a member of the Security Association from 1 October 1986 until 19 December 1997, at which time Fieldcrest purchased workers' compensation insurance. In 2000, Pillowtex filed for bankruptcy in Delaware. However, the bankruptcy court ordered relief from the automatic stay to allow Pillowtex to continue resolving workers' compensation claims that had arisen prior to Fieldcrest's membership in the Security Association, *i.e.*, claims that arose prior to 1 October 1986. Pillowtex reorganized and emerged from bankruptcy.

Pillowtex filed for a second bankruptcy in 2003. At that time, Fieldcrest defaulted on its workers' compensation claims incurred during its period of self-insurance—claims that arose prior to Fieldcrest joining the Security Association on 1

October 1986. Plaintiffs'-Appellants' claims, and approximately 15 other similarly situated former employees' claims, fell into this category—their employment and their last injurious exposure to asbestos both occurred prior to 1 October 1986 but their asbestos-related diseases were not diagnosed until after Fieldcrest's bankruptcies. Because Plaintiffs-Appellants were diagnosed with their asbestos-related diseases after Fieldcrest declared bankruptcy in 2003 and defaulted on all of its outstanding workers' compensation claims, their last resort to seek compensation is the Security Association.

Both Plaintiffs-Appellants filed workers' compensation claims against Fieldcrest and the Security Association in the Industrial Commission in 2009. The matter came on for hearing before the Full Commission on 4 August 2014. The Full Commission concluded that the language of section 97-130(4) was plain and unambiguous and statutorily excluded both Plaintiffs'-Appellants' claims because "covered claims" only includes those claims that relate to an injury that occurred while the employer was a member of the Security Association. Here, because Plaintiffs-Appellants were not injured but had asbestos-related diseases, the Full Commission relied on N.C. Gen. Stat. § 97-57, which provides that in latent occupational disease cases, "liability attaches to the employer or carrier who is on the risk when the last injurious exposure occurs." Thus, because "Fieldcrest was not a member of [the] Security Association on the alleged date of last injurious exposure,"

the Plaintiffs'-Appellants' claims were not "covered claims" under section 97-130(4). Plaintiffs-Appellants appeal.

## Standard of Review

"The Industrial Commission's conclusions of law are reviewable *de novo* by this Court." *Moore v. City of Raleigh*, 135 N.C. App. 332, 334, 520 S.E.2d 133, 136 (1999). "Although the Workers' Compensation Act should be liberally construed, judges must interpret and apply statutes as they are written" to ensure that the legislative intent is accomplished. *Clark v. ITT Grinnell Indus. Piping, Inc.*, 141 N.C. App. 417, 426, 539 S.E.2d 369, 375 (2000). As our Supreme Court has noted:

> This Court has interpreted the statutory provisions of North Carolina's workers' compensation law on many occasions. In every instance, we have been wisely guided by several sound rules of statutory construction which bear repeating at the outset here. First, the Workers' Compensation Act should be liberally construed, whenever appropriate, so that benefits will not be denied upon mere technicalities or strained and narrow interpretations of its provisions. Second, such liberality should not, however, extend beyond the clearly expressed language of those provisions, and our courts may not enlarge the ordinary meaning of the terms used by the legislature or engage in any method of "judicial legislation." Third, it is not reasonable to assume that the legislature would leave an important matter regarding the administration of the Act open to inference or speculation; consequently, the judiciary should avoid ingrafting upon a law something that has been omitted, which it believes ought to have been embraced.

*Shaw v. U.S. Airways, Inc.*, 362 N.C. 457, 462-63, 665 S.E.2d 449, 452-53 (2008).

## Analysis

The only issue on appeal is whether N.C. Gen. Stat. § 97-130(4) can be interpreted to include Plaintiffs'-Appellants' claims even though their last injurious exposure occurred prior to Fieldcrest becoming a member of the Security Association.

The Security Association is a nonprofit, unincorporated entity created to, among other things, "provide mechanisms for the payment of covered claims against member self-insurers, to avoid excessive delay in payment of covered claims, [and] to avoid financial loss to claimants because of the insolvency of a member self-insurer." N.C. Gen. Stat. § 97-131(a) (2013). All individual and group self-insurers are required to be members of the Security Association as a condition of being licensed to self-insure by the Commissioner of Insurance. N.C. Gen. Stat. § 97-131(b) (2013). "An individual self-insurer or group self-insurer shall be deemed to be a member of the Association for purposes of its own insolvency if it is a member when the compensable injury occurs." N.C. Gen. Stat. § 97-131(b)(2) (2013). "Covered claims" are the unpaid claims against insolvent self-insurers "that relate[] to an injury that occurs while the [self-insurer] is a member of the Association and that is compensable under [the Workers' Compensation Act]." N.C. Gen. Stat. § 97-130(4) (2013).

The plain language of sections 97-130 and 97-131 restricts the scope of compensation to those claims that arise while a self-insured company is both (1) insolvent and (2) a member of the Security Association. Thus, the only claims that

the Security Association would be obligated to pay on behalf of Fieldcrest are those that "relate to an injury" that occurred—or in this case, relate to an occupational disease where the last injurious exposure occurred—while Fieldcrest was a member of the Security Association. Because the Security Association was not created until 1 October 1986, a date *after* each of Plaintiffs'-Appellants' last injurious exposure to asbestos occurred, these claims do not constitute "covered claims" within the scope of the statutes. Thus, the Full Commission properly concluded that Plaintiffs-Appellants are not eligible for compensation pursuant to N.C. Gen. Stat. § 97-130(4) and § 97-131.

Plaintiffs-Appellants contend that the plain meaning approach to interpreting the statutes is "overly narrow" for two reasons. First, Plaintiffs-Appellants argue that because the General Assembly used only the word "injury" in N.C. Gen. Stat. 97-130(4), "the General Assembly simply never contemplated some of the unique issues found in disease claims when it enacted the Security Association statutes." Therefore, as Plaintiffs-Appellants contend, the laws regarding the Security Association must be "flexibly construe[d]" to effectuate the intent of the legislature to compensate victims of occupational disease in addition to victims of injuries. This argument fails because section 97-52 (2013) of the Workers' Compensation Act provides that the disablement or death from an occupational disease "shall be treated as the happening of an injury by accident." Thus, the General Assembly's use of the

word "injury" necessarily included any claims for occupational disease. Therefore, it is not necessary to "flexibly" expand our interpretation of what constitutes a "covered claim" based on the General Assembly's failure to use the word "occupational disease" in the relevant statutes.

Second, Plaintiffs-Appellants allege that the amendments to the statutes when the Security Association was first created in 1986 evidence a legislative intent that "all claims arising due to an insolvency whether before or after 1986 would be paid by the Security Association." Following Plaintiffs'-Appellants' logic, "covered claims" would include even those claims that had arisen before a self-insurer became a member of the Security Association; in other words, once a self-insurer joined the Security Association, all claims were retroactively covered. We disagree with this interpretation of the amendments.

As noted, while we must liberally construe workers' compensation statutes, this Court must not enlarge the definition of "covered claims" beyond the clearly expressed language of the statutes. *See Shaw*, 362 N.C. at 462-63, 665 S.E.2d at 453. Plaintiffs-Appellants rely on the original 1986 version of section 97-133(a)(4), which has been subsequently amended, that states:

> The Association shall pay claims against a self-insurer that are not or have not been paid as a result of a determination of insolvency or the institution of bankruptcy or receivership proceedings *that occurred prior to the effective date of this Article*; provided that any assessments made to pay such claims may be credited towards the tax paid by

the self-insurers under G.S. 97-100.

1986 N.C. Sess. Laws 208, 208-09, ch. 928, § 1 (emphasis added). Plaintiffs-Appellants interpret this language to mean that any claims that arose "prior to the effective date" of the Security Association statutes are covered. However, Plaintiffs-Appellants have misinterpreted this statute; the clause "that occurred prior to the effective date of this Article" refers to when the insolvency occurred, not when the claims arose. This original version of the statute required the Security Association to pay claims that had arisen prior to 1 October 1986 only if the self-insurer had become insolvent prior to the creation of the Security Association, in order to cover the existing workers' compensation claims against the insolvent trucking companies. However, the original language does not reflect an intent to cover pre-existing claims against companies that were solvent prior to creation of the Security Association. In other words, there is no coverage for pre-1986 claims if the insolvency of the self-insurer occurred after the Security Association was created.

In addition to misconstruing the original language of section 97-133(a)(4), Plaintiffs-Appellants completely disregard the plain language of the original version of section 97-131(b)(2):

> A self-insurer shall be deemed to be a member of the Association for purposes of its own insolvency when: (a) the self-insurer is a member of the Association *when the insolvency occurs*, but claims relating to a compensable event that occurred prior to the date the self-insurer joined the Association are not included hereunder[.]

1986 N.C. Sess. Laws 402, 403, ch. 1013, § 1 (emphasis added). This language plainly precluded claims that arose before a self-insurer joined the Security Association if the self-insurer was solvent prior to the creation of the Security Association. Moreover, even under the original version of the statutes, a "covered claim" still only included those claims that related to an injury that occurred while the self-insurer was a member of the Security Association. *Id.* Plaintiffs'-Appellants' interpretation of the 1986 version of section 97-133(a)(4) cannot be reconciled with the other provisions of the statutes expressly precluding coverage for pre-existing claims against self-insurers who were solvent at the time the Security Association was created. Thus, even if this Court were to conclude that the language is ambiguous, and look to the legislative history to discern intent, the original 1986 statutes precluded Plaintiffs'-Appellants' claims from being "covered claims" because: (1) Fieldcrest was solvent when it joined the Security Association on 1 October 1986; and (2) Plaintiffs'-Appellants' last injurious exposure occurred prior to Fieldcrest becoming a member.

Finally, Plaintiffs-Appellants contend that the Full Commission's order violates their due process and equal protection rights. However, because Plaintiffs-Appellants fail to raise any constitutional argument before the Industrial Commission, they waived these arguments on appeal. *See Powe v. Centerpoint Human Servs.*, 215 N.C. App. 395, 412, n.3, 715 S.E.2d 296, 307, n.3 (2011) (refusing

to address a plaintiff's constitutional argument when she failed to raise this issue before the Industrial Commission).

## Conclusion

Based on the plain and unambiguous language of the statutes governing the Security Association, we affirm the Full Commission's conclusion that Plaintiffs'-Appellants' claims are not "covered claims" for purposes of compensation.

AFFIRMED.

Judges STROUD and MCCULLOUGH concur.