IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-602

Filed: 7 April 2020

N.C. Industrial Commission, I.C. No. W58084

THELMA BONNER BOOTH, Widow and Administratrix of the ESTATE OF HENRY
HUNTER BOOTH, JR., Deceased Employee, Plaintiff

v.

HACKNEY ACQUISITION COMPANY, f/k/a HACKNEY & SONS, INC., f/k/a
HACKNEY & SONS (EAST), f/k/a J.A. HACKNEY & SONS, Employer, NORTH
CAROLINA INSURANCE GUARANTY ASSOCIATION on behalf of AMERICAN
MUTUAL LIABILITY INSURANCE, Carrier, and on behalf of THE HOME
INSURANCE COMPANY, Carrier, Defendants

Appeal by Plaintiff from Opinion and Award entered 30 April 2019 by the

North Carolina Industrial Commission. Heard in the Court of Appeals 4 December

2019.

*Wallace & Graham, by Edward L. Pauley, for plaintiff-appellant.*

*Nelson Mullins Riley & Scarborough LLP, by Christopher J. Blake, for
defendant-appellee North Carolina Insurance Guaranty Association.*

HAMPSON, Judge.

**Factual and Procedural Background**

Thelma Bonner Booth (Plaintiff) appeals from an Opinion and Award on

Remand of the Full Commission of the North Carolina Industrial Commission

(Commission) dismissing her claim against Hackney Acquisition Company, f/k/a

Hackney & Sons, Inc., f/k/a Hackney & Sons (East), f/k/a J.A. Hackney & Sons, and

the North Carolina Insurance Guaranty Association (NCIGA) on behalf of both American Mutual Liability Insurance and the Home Insurance Company (Defendants).  Specifically, the Commission granted NCIGA's Motion to Dismiss on behalf of Home Insurance Company on the basis Plaintiff's claim was barred by the North Carolina Insurance Guaranty Association Act's (Guaranty Act) bar date provision and/or statute of repose.[1]  N.C. Gen. Stat. §§ 58-48-35(a)(1), -100(a) (2019).  The Record reflects the following relevant facts:

Henry Hunter Booth Jr. (Decedent) was employed as a welder by Hackney Acquisition Company (Hackney) from 1967 through 1989.  Hackney held workers' compensation insurance through the Home Insurance Company, covering Decedent as an employee from 1988-1990.  On 13 June 2003, a New Hampshire court declared Home Insurance Company insolvent in an Order for Liquidation.  The New Hampshire court further ordered all claims against the company be filed by 13 June 2004.

In June 2008, Decedent was diagnosed with lung cancer, from which he died on 27 April 2009.  On 1 December 2009, Plaintiff filed a Form 18 "Notice of Accident

---

[1] Plaintiff's claim against NCIGA for coverage provided by the now-allegedly insolvent American Mutual Liability Insurance is not before this Court on appeal.  Plaintiff makes no argument as to coverage by NCIGA for claims related to American Mutual Liability Insurance.  Indeed, the Record is devoid of any indication of the status of this aspect of Plaintiff's claim.  It is Plaintiff's contention, agreed to by NCIGA, the Commission's Opinion and Award is a final adjudication of all of Plaintiff's claims.  Thus, it appears—certainly for purposes of this appeal—Plaintiff has abandoned any claim against NCIGA related to coverage provided by American Mutual Liability Insurance.

to Employer and Claim of Employee, Representative, or Dependent" on behalf of Decedent for worker's compensation benefits with the Commission. Plaintiff's Form 18 was supported by a written opinion letter from Dr. Arthur L. Frank opining to a reasonable degree of medical certainty Decedent's lung cancer was caused by "his exposures to welding fumes in combination with his habit of cigarette smoking."

On 17 June 2013, NCIGA, on behalf of now-insolvent Home Insurance Company, filed a Form 61 "Denial of Workers' Compensation Claims." On 20 October 2015, NCIGA filed a Motion to Dismiss Plaintiff's claims, arguing claims related to Home Insurance Company were barred under the Guaranty Act's bar date provision—N.C. Gen. Stat. § 58-48-35(a)(1)—and the five-year statute of repose—N.C. Gen. Stat. § 58-48-100(a).

A Deputy Commissioner denied NCIGA's Motion on 2 December 2015. On 5 January 2016, NCIGA appealed to the Full Commission. Before the Full Commission, Plaintiff argued that interpreting the Guaranty Act's bar date and statute of repose to deny otherwise valid claims before they existed was a "violation of constitutional due process" under the North Carolina and United States Constitutions. On 7 December 2016, the Full Commission certified to this Court the questions of the constitutionality of the bar date provision and statute of repose under the North Carolina and United States Constitutions.

On 7 November 2017, this Court, in *Booth v. Hackney Acquisition Co.*, held both of these provisions of the Guaranty Act were constitutional under the State and Federal Constitutions and remanded the matter to the Full Commission for further proceedings. *See* 256 N.C. App. 181, 189, 807 S.E.2d 658, 664 (2017), *disc. rev. denied*, 370 N.C. 696, 811 S.E.2d 594 (2018).

On remand from the Court of Appeals, the Full Commission issued its Opinion and Award on 30 April 2019 granting the NCIGA's Motion to Dismiss, concluding Plaintiff's claim was barred by both the Guaranty Act's bar date and the statute of repose. Plaintiff timely appealed from this Opinion and Award.

## Issue

The sole issue on appeal is whether this Court may interpret the Guaranty Act to include Plaintiff's claim even though the plain language of the bar date provision and statute of repose exclude coverage.

## Analysis

Plaintiff contends strict application of the Guaranty Act's bar date provision and separately the statute of repose "def[y] the nature and purpose[ ]" of the Guaranty Act and the North Carolina Workers' Compensation Act because it bars claims, such as Decedent's, that arise due to occupational diseases discovered after the bar date and statute of repose, respectively, rendering recovery under the Guaranty Act impossible. Accordingly, Plaintiff raises an argument of statutory construction,

which we review de novo. *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) ("Issues of statutory construction are questions of law, reviewed de novo on appeal.")

## I. The North Carolina Insurance Guaranty Association

NCIGA is a "nonprofit, unincorporated legal entity" created by the General Assembly in the 1971 Guaranty Act to "provide a mechanism for the payment of *covered claims* under certain insurance policies . . . to avoid financial loss to claimants or policyholders because of the insolvency of an insurer . . . ." N.C. Gen. Stat. §§ 58-48-25, -5 (2019) (emphasis added); *An Act to Provide for the Establishment of the North Carolina Insurance Guaranty Association*, 1971 N.C. Sess. Law 670 (N.C. 1971). The Guaranty Act's coverage expanded in 1993 to include workers' compensation claims made against insolvent insurers. *See* 1991 N.C. Sess. Law 802, §§ 1, 13 (N.C. 1991). "Under the Guaranty Act, when an insurer becomes insolvent and is liquidated by the insurance regulator of this or another state, NCIGA becomes 'obligated' to pay for 'covered claims' on behalf of the insolvent insurer in accordance [S]ection 58-48-35." *N.C. Ins. Guar. Ass'n v. Board of Tr. of Guilford Technical Cmty. College*, 364 N.C. 102, 104, 691 S.E.2d 694, 696 (2010).

Here, for NCIGA to incur liability for Plaintiff's claim against the insolvent Home Insurance Company, the claim must be a "covered claim." *See* N.C. Gen. Stat. § 58-48-35(a)(1). A "covered claim" is

> an unpaid claim . . . in excess of fifty dollars ($50.00) and [that] arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Article applies as issued by an insurer, if such insurer becomes an insolvent insurer after the effective date of this Article and (i) the claimant or insured is a resident of this State at the time of the insured event[.]

*Id.* § 58-48-20(4). A covered claim does "not include any claim filed with [NCIGA] after the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer." *Id.* § 58-48-35(a)(1)(b).

Separately, the Guaranty Act's statute of repose provides an otherwise covered claim "not instituted against the insured of an insolvent insurer or [NCIGA], within five years after the date of entry of the order by a court of competent jurisdiction determining the insurer to be insolvent, shall thenceforth be barred forever as a claim against [NCIGA]." *Id.* § 58-48-100(a).

Here, NCIGA contends Plaintiff's claim is barred by the bar date in Section 58-48-35(a)(1), as both parties agree the bar date is 13 June 2004 and Plaintiff did not file her claim until 1 December 2009. Additionally, NCIGA contends even if Plaintiff's claim constitutes a covered claim notwithstanding the bar date, Plaintiff's claim is barred by the five-year statute of repose. Specifically, in order to meet the statute of repose, Plaintiff (or Decedent) would have had to file a claim within five years of the date the New Hampshire court declared Home Insurance Company to be insolvent.

*Id.* § 58-48-100(a).  Specifically, in this case, this would have required Plaintiff or Decedent to have filed a claim by or before 13 June 2008.

Plaintiff concedes strict application of the bar date and statute of repose would operate to bar her claims.  However, Plaintiff argues this result is untenable because Decedent was not diagnosed with Lung Cancer until 23 June 2008 and did not pass away until 2009, rendering Plaintiff's ability to comply with the 13 June 2004 bar date an impossibility.  Additionally, Plaintiff contends the five-year statute of repose date (13 June 2008) would also render it impossible for Plaintiff to pursue her claim for death benefits because Decedent did not pass away until 2009.  Plaintiff, therefore, requests this Court to construe the bar date provision and statute of repose liberally, arguing this interpretation would be in line with the way our Courts interpret workers' compensation statutes.  *See Chaisson v. Simpson*, 195 N.C. App. 463, 469, 673 S.E.2d 149, 155 (2009) (citation and quotation marks omitted) ("Our Supreme Court has repeatedly held that our Workers' Compensation Act should be liberally construed to effectuate its purpose to provide compensation for injured employees or their dependents[.]").

Acknowledging, the Guaranty Act is not part of the statutory workers' compensation regime found in Chapter 97 of our General Statutes, and indeed covers a broader scope of claims involving insolvent insurance carriers, for purposes of argument we assume Plaintiff's position is the correct framework for our analysis.

However, even applying the liberal rules of construction articulated by the North Carolina Supreme Court in interpreting workers' compensation statutes, we cannot reach Plaintiff's desired result. Our Supreme Court has stated three primary guiding principles for interpreting our workers' compensation statutes.

> First, the Workers' Compensation Act should be liberally construed, whenever appropriate, so that benefits will not be denied upon mere technicalities or strained and narrow interpretations of its provisions. Second, such liberality should not, however, extend beyond the clearly expressed language of those provisions, and our courts may not enlarge the ordinary meaning of the terms used by the legislature or engage in any method of judicial legislation. Third, it is not reasonable to assume that the legislature would leave an important matter regarding the administration of the Act open to inference or speculation; consequently, the judiciary should avoid ingrafting upon a law something that has been omitted, which it believes ought to have been embraced.

*Ketchie v. Fieldcrest Cannon, Inc.,* 243 N.C. App. 324, 326-27, 777 S.E.2d 129, 131 (2015) (quotation marks omitted) (citing *Shaw v. U.S. Airways, Inc.*, 362 N.C. 457, 463, 665 S.E.2d 449, 453 (2008)).

Plaintiff argues for a sweeping interpretation of the Guaranty Act, contending "the General Assembly decided to protect all employees and employers against insolvencies when it created the NCIGA." However, NCIGA is not the legal successor to the insolvent insurer. Rather, NCIGA's only obligation is to pay claims falling within the statutory definition of "covered claims." *See City of Greensboro v. Reserve Insurance Co.*, 70 N.C. App. 651, 664, 321 S.E.2d 232, 240 (1984) ("[A] guaranty

association is not the legal successor of the insolvent insurer; rather, it is obligated to pay claims only to the extent of covered claims[.]").  Indeed, the plain language of the Guaranty Act expressly limits coverage only to "covered claims."  N.C. Gen. Stat. § 58-48-5.  Likewise, the five-year statute of repose is couched in equally clear language barring any claims not settled or instituted within five years of the date the insurer is judicially determined insolvent:

> Notwithstanding any other provision of law, a covered claim with respect to which settlement is not effected with the Association, or suit is not instituted against the insured of an insolvent insurer or the Association, within five years after the date of entry of the order by a court of competent jurisdiction determining the insurer to be insolvent, shall thenceforth be barred forever as a claim against the Association.

*Id.* § 58-48-100(a).

Thus, in order to reach the result for which Plaintiff advocates, this Court would be required to ignore the clearly expressed language of the bar date provision and statute of repose.  N.C. Gen. Stat. §§ 58-48-35(a)(1)(b), -100(a).  This we may not do even applying a liberal construction of the statute.

Plaintiff additionally argues, given the remedial purpose of the Guaranty Act, the General Assembly could not have intended to eliminate an entire class of claimants—those who suffer from a subsequently diagnosed latent occupational disease—from the scope of the Guaranty Act's coverage.  Plaintiff reasons in enacting the bar date and statute of repose, the "General Assembly did not consider

occupational disease claims where the insolvency can occur years before the diagnosis of the occupational disease." However, "it is not reasonable to assume that the legislature would leave an important matter regarding the administration of the Act open to inference or speculation[.]" *Shaw*, 362 N.C. at 463, 665 S.E.2d at 453.

The statute of repose was added to the Guaranty Act in 1985. 1985 N.C. Sess. Law 613, § 9 (N.C. 1985). Four years later, in 1989, the bar date was added. *An Act to Amend the Postassessment Insurance Guaranty Association Act*, 1989 N.C. Sess. 206, § 3 (N.C. 1989). Then, the Guaranty Act was expanded to include coverage for covered workers' compensation claims beginning in 1993. *An Act Concerning the Workers' Compensation Security Funds*, 1991 N.C. Sess. Law 802, § 1 (N.C. 1991). Notably, in expanding the scope of coverage of the Guaranty Act, the General Assembly did not amend the bar date or statute of repose or make any accommodation for their application to workers' compensation claims (whether by injury or occupational disease). Under principles of statutory construction, we must presume the General Assembly was aware of the prior statutes establishing the bar date and statute of repose and elected not to make any alterations. *See Williams v. Alexander County Bd. of Educ.*, 128 N.C. App. 599, 603, 495 S.E.2d 406, 408 (1998) (citation omitted) ("In ascertaining the intent of the legislature, the presumption is that it acted with full knowledge of prior and existing laws.").

Furthermore, by 1991, the Legislature was aware of the history of latent occupational diseases. *See Wilder v. Amatex Corp.*, 314 N.C. 550, 558, 336 S.E.2d 66, 71 (1985) (majority) ("Both the Court and the legislature have long been cognizant of the difference between diseases on the one hand and other kinds of injury on the other from the standpoint of identifying legally relevant time periods. This is demonstrated by examination of some of the workers' compensation statutes and this Court's decisions interpreting them."); *Id.* at 563, 336 S.E.2d at 74 (Meyer, J., dissenting) ("I cannot concur in Part II of the majority opinion which concludes that our legislature did not intend that occupational disease cases . . . should be covered by the statute of repose . . . . With regard to legislative intent, the majority seems to ascribe to the members of the General Assembly an unawareness of developments in the legal arena in the early 1970s, when that statute was enacted, that I find naive. At that point in time, delayed manifestation injuries, together with the time-delayed product injuries, constituted a giant wave that was breaking upon the courts.").

Nevertheless, Plaintiff points to instances in which our Courts have avoided strict application of statutes time-barring workers' compensation claims—including for example applying equitable principles of estoppel[2]—and, indeed, points to *Wilder* in particular as a judicially created exception to a statute of repose. *Wilder,* 314 N.C. at 562, 336 S.E.2d at 73. In *Wilder*, our Supreme Court held a now-repealed workers'

---

[2] There is no argument in this case NCIGA should be estopped from asserting either the bar date or statute of repose.

compensation statute of repose in question did not apply to occupational disease claims. *Id.* However, in *Wilder*, the Court specifically concluded "the legislature intended the statute to have no application to claims arising from disease." *Id.* The Court, looking at the bill's legislative history, identified a "deliberate omission of reference to disease as this statute made its way through the legislative process[.]" *Id.* Indeed, the Court tracked the language of the statute through the legislative process and noted "[a]s finally enacted the statute omitted all references to claims arising out of disease." *Id.*

Here, the Guaranty Act's bar date and statute of repose do not distinguish between types of claims. To the contrary, the triggering dates for purposes of both are established not by the occurrence of injury or disease but are tied solely to the insolvency of the insurance carrier. Without evidence of legislative intent otherwise, the case *sub judice* is not analogous to *Wilder*, and accordingly, "the judiciary should avoid ingrafting upon a law something that has been omitted which it believes ought to have been embraced." *Shaw,* 362 N.C. at 463, 665 S.E.2d at 453 (citations and quotation marks omitted).

Here, we agree with Plaintiff the statutory regime of the Guaranty Act as it currently exists fails to provide accommodation for latent occupational disease claims that may not manifest until expiration of the bar date and/or the statute of repose. However, Plaintiff's requested "remedy lies with the Legislature and not with the

Court, whose business it is to administer and expound the law, not to make it." *Hawkins v. County of Randolph*, 5 N.C. 118, 121 (1806). Even attempting to construe the Guaranty Act liberally, as Plaintiff requests, "our courts may not enlarge the ordinary meaning of the terms used by the legislature or engage in any method of 'judicial legislation.' " *Shaw,* 362 N.C. at 463, 665 S.E.2d at 453 (citation and quotation marks omitted). We are constrained by the plain language of the Guaranty Act and "should avoid ingrafting upon a law something that has been omitted[.] *Id.* Therefore, we decline to adopt Plaintiff's proffered reading of the Guaranty Act. The Commission, thus, correctly determined Plaintiff's claim against NCIGA arising from the insolvency of Home Insurance Company is barred under either the statutory bar date and/or the statute of repose.

## Conclusion

Accordingly, for the foregoing reasons, the Order of the Full Commission is affirmed.

AFFIRMED.

Judges BRYANT and COLLINS concur.